The Terre Haute and Indianapolis R. R. Co. *v.* Fitzgerald.

could not recover for the fraud. This is not the law. He must have relied on his own judgment, and not on the false representations, to prevent him from recovering on them.

The judgment is reversed, at the costs of the appellee, with instructions to grant a new trial.

---

THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY *v.* FITZGERALD.

RAILROAD.—*Liability for Acts of Conductor.*—A railroad company is liable for the wilful acts or torts of the conductor of a train and its other servants acting under him, in ejecting a passenger, when such ejection is wrongful.

SAME.—*Commutation Ticket.*—A railroad company, being the owner of one road and the lessee of another, the two forming a continuous line between Indianapolis and St. Louis, sold a "thousand-mile" ticket, authorizing the purchaser to travel three hundred miles upon one of said roads and seven hundred miles upon the other, having black figures representing the one road and red figures the other, with directions to conductors to punch out the black figures representing the number of miles travelled on the western division of the road, and the red figures for the miles travelled on the eastern end. On the back of the ticket were printed conditions, on which the ticket was issued, signed by the purchaser, among which was a stipulation that the miles travelled each trip should be indicated by the conductor punching out corresponding figures on the opposite side. After all the red figures had been punched out, the purchaser offered the ticket for passage on a train on the eastern division of the through line, which the conductor refused to accept, though there were black figures not punched out amounting to the number of miles for which it was offered; and the holder of the ticket, refusing to pay his fare or to leave the car unless forcibly ejected, was put off by the conductor and his assistants.

*Held,* that the terms expressed on the ticket constituted a contract between the seller and purchaser of the ticket; that when the purchaser had travelled on the eastern part of the line a sufficient number of miles to exhaust the red figures, the ticket gave him no claim to be carried any more on that part of the road, and that his refusal to pay fare and to leave the car on request justified his expulsion therefrom.

From the Shelby Common Pleas.

*A. G. Porter, B. Harrison,* and *C. C. Hines,* for appellant.

*T. A. Hendricks, O. B. Hord, A. W. Hendricks,* and *A. F. Denny,* for appellee.

OSBORN, J.—This was an action by the appellee to recover damages for an alleged unlawful expulsion from the cars of the appellant by its servants.

The complaint contains three paragraphs. The first alleges that the appellant is the owner of a railroad extending from Indianapolis to Terre Haute, and engaged in the business of conveying persons for hire to and from those places, and intermediate places on the line of the road; that on a day named, the appellee paid the usual fare from Terre Haute to Greencastle, and took passage and occupied a seat in one of the cars of the appellant from the former to the latter place; that after travelling ten miles the conductor demanded pay from him as a passenger, and refusing to comply with such demand, he was forcibly ejected from the car, and left at Brazil, a station between Terre Haute and Greencastle.

The second and third paragraphs, respectively, allege in different forms, that the appellant was the owner of the Terre Haute and Indianapolis Railroad, extending from Terre Haute to Indianapolis, and had the control of the St. Louis, Vandalia, and Terre Haute Railroad, extending from St. Louis to Terre Haute, and together forming a continuous line from Indianapolis, in this State, to St. Louis, in the State of Missouri, and known as the St. Louis, Vandalia, Terre Haute, and Indianapolis Railroad. They also allege the purchase of a ticket of the appellant by the appellee for the sum of twenty-five dollars, called a "thousand mile ticket," by which the appellant undertook to carry the appellee a distance of one thousand miles on the St. Louis, Vandalia, Terre Haute, and Indianapolis Railroad; that he had not travelled the distance of one thousand miles on the road so owned or operated by the appellant, but was entitled to travel thereon from Terre Haute to Greencastle; that by virtue of the agreement contained in the ticket, and an endorsement on the back of it, he took passage on one of

the cars at Terre Haute for Greencastle; that the conductor of the train, knowing that he was so entitled to travel and be conveyed, wrongfully and maliciously refused to permit him to travel on the train, and that he was violently, rudely, angrily, and maliciously seized upon by the conductor of the train and other servants of the appellant, and dragged from his seat through the car, and thrown prostrate upon the ground, and finally left at Brazil, a station on the road a considerable distance west of the town of Greencastle, whereby he received permanent and serious injuries.

The third paragraph contains some other allegations, but as no question is made as to the sufficiency of that paragraph, we do not consider it necessary to state them.

Separate demurrers were filed to each paragraph of the complaint, which were overruled, and exceptions taken. An answer of general denial was then filed. The cause was tried by a jury, who rendered a verdict for the appellee, and assessed his damages at two thousand five hundred dollars. The appellant filed a motion for a new trial, which was overruled, and judgment was rendered upon the verdict. Proper exceptions were taken.

Several reasons are set out in the motion for a new trial. The second is, that the verdict is not sustained by sufficient evidence.

4. Errors of law occurring at the trial, and excepted to by the appellant at the time.

Two of the alleged errors relate to the admission and exclusion of evidence. One, that the court refused to give certain instructions asked by the appellant; another, that the court gave certain instructions over the objection and exception of the appellant; and another that the court gave the jury only one form of verdict, and that for the plaintiff. Other errors are complained of, but under the rulings of this court they are not sufficiently explicit to raise any question, and hence need not be noticed.

The errors assigned are:

VOL. XLVII.—6

The Terre Haute and Indianapolis R. R. Co. *v.* Fitzgerald.

1. In overruling the demurrers to the complaint.

2. In overruling the motion for a new trial.

The objection to the first and third paragraphs of the complaint is waived; but it is urged that the demurrer to the second should have been sustained, for the reason that there is no averment that, before the removal from the train, the appellee exhibited or tendered his ticket to the conductor, or even had it in his possession; nor that the conductor, or any of the servants of the appellant, knew that he had it in his possession.

It is alleged, that since the purchase of the ticket the appellee had not travelled one thousand miles on the road, by virtue of the agreement; that the appellant well knowing that he was so entitled to be conveyed, but maliciously and fraudulently contriving to defraud and injure him, wholly refused to permit the appellee to travel on the train after receiving him in one of the cars composing the train, for the purpose of travelling upon and being conveyed as a passenger; and that when the train had run ten miles from the place where he had entered the car as such passenger, he was violently, rudely, angrily, and maliciously seized upon by the conductor of the train, one of the appellant's servants, and by four others of its servants, and dragged from his seat through the cars, and thrown and pushed prostrate upon the ground, and finally left at Brazil, more than twenty miles from his place of destination; that he was not guilty of any disorderly conduct, and did not violate any of appellant's rules.

We think the paragraph in question good, and the demurrer to it correctly overruled. The company was liable for the wilful acts or torts of the conductor, and its other servants acting under him, in ejecting the appellee from the car. His expulsion was within the general scope of the employment and authority of the conductor. *The Jeffersonville R. R. Co.* v. *Rogers*, 38 Ind. 116. The *gravamen* of the action was the violent and malicious expulsion, and not the breach of the contract to carry.

Before stating or considering the alleged error in giving

instructions, it will be proper to state that the record shows, amongst other things, that the road of the appellant extends from Terre Haute to Indianapolis; that the St. Louis, Vandalia, and Terre Haute Railroad extends from St. Louis to Terre Haute; that the last named road is run, managed, and operated by the appellant, under a lease, by the terms of which it is to receive a certain percentage of the gross receipts from all traffic moved over the line, or business done thereon, as a consideration for working, maintaining, and operating the road; that the two roads are run as one continuous line, extending from St. Louis to Indianapolis, under the control of the appellant; that the two roads thus united are called "The St. Louis, Vandalia, Terre Haute, and Indianapolis Railroad;" that prior to the 15th of September, 1870, the appellant purchased a thousand-mile ticket, for sale to persons on application to the proper agent of the company. It is claimed by the appellant that such tickets were sold only to merchants, and persons having occasion frequently to travel over the line of the road. The fare was less under that kind of a ticket than by the usual trip ticket. It contained on its face numbers which, added together, made an aggregate of one thousand miles. There were two sets of figures, one black and the other red; the black represented seven hundred miles, and the red three hundred, the black exceeding the red in the proportion that the St. Louis and Vandalia, or western division, exceeded the Terre Haute and Indianapolis, or eastern division, in length. The black numbers were above, and the red numbers below the ticket. On the back of the ticket were certain printed conditions, which the purchaser signed before it was sold and delivered to him.

On the 15th of September, 1870, the appellee applied to the proper agent of the appellant, to purchase one of these tickets, representing, as the agent testified, that he was an agent of an emigrant colonization society, and the appellee testified that he had been such agent, in answer to a question relative to his business. The ticket was sold to

The Terre Haute and Indianapolis R. R. Co. *v.* Fitzgerald.

him for twenty-five dollars.   The following is a copy of the ticket, with the stubs and conditions on the back of it:

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 149 | | SOLD SEPTEMBER 15TH, 1870, | | | | | | | | | |
| L. | $25. | To N. W. & J. A. FITZGERALD. | | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 30 | 20 | 15 | 10 | 6 | 5 | 4 | 3 | 2 | 1 |
| 30 | 20 | 15 | 10 | 6 | 5 | 4 | 3 | 2 | 1 |
| 30 | 20 | 15 | 10 | 6 | 5 | 4 | 3 | 2 | 1 |
| 30 | 20 | 15 | 10 | 6 | 5 | 4 | 3 | 2 | 1 |
| 20 | 15 | 10 | 6 | 6 | 5 | 4 | 3 | 2 | 1 |
| 15 | 15 | 10 | 6 | 6 | 5 | 4 | 3 | 2 | 1 |
| 20 | 15 | 10 | 6 | 5 | 5 | 4 | 3 | 2 | 1 |
| 20 | 15 | 10 | 6 | 5 | 5 | 4 | 3 | 2 | 1 |
| 10 | 5 | 4 | 4 | 3 | 3 | 2 | 2 | 1 | 1 |

Mr. N. W. and J. A. Fitzgerald may travel one thousand miles on the St. Louis, Vandalia, Terre Haute, and Indianapolis Railroad, subject to the conditions on the back of this ticket.

Conductors will punch out the black figures for passage on St. L., V. & T. H. R. R., and the red figures on the T. H. & I. R. R.

F. CHANDLER,
*Gen. Ticket Agent.*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 15 | 10 | 6 | 5 | 4 | 3 | 3 | 2 | 1 | 1 |
| 15 | 10 | 6 | 5 | 4 | 3 | 3 | 2 | 1 | 1 |
| 15 | 10 | 6 | 5 | 4 | 3 | 3 | 2 | 1 | 1 |
| 15 | 10 | 6 | 5 | 4 | 3 | 3 | 2 | 1 | 1 |
| 15 | 10 | 6 | 5 | 4 | 3 | 3 | 2 | 1 | 1 |
| 15 | 10 | 6 | 5 | 4 | 3 | 3 | 2 | 1 | 1 |

St. Louis, Vandalia, Terre Haute & Indianapolis Railroad.

MILEAGE TICKET.
Sold September 15th, 1870,
To N. W. AND J. A. FITZGERALD,
$25.

Conductors will take up this check and return it to the General Ticket Office.

On the back of the ticket were the following printed conditions, signed by the plaintiff:

"CONDITIONS.

"The person purchasing this ticket does so with the express agreement that the same is not transferable, and that he will use the same within———— months from its date. Should it be presented after the time specified, or by any other person, the conductor is authorized to take up this ticket, and return it to the general ticket office of the company. The miles travelled each trip to be indicated by conductor punching out corresponding figures on the opposite side.

"I accept the above conditions, and have purchased this ticket with a full understanding of the same.

"September 15th, 1870. N. W. FITZGERALD."

He travelled over the road and used the ticket until all the red figures and many of the black ones had been punched out. According to his testimony, he had travelled and used the ticket from Indianapolis to Greencastle, a distance of forty-one miles, and back, from four to six times. On two or three occasions, after the red figures were all punched out, he travelled on the cars of the appellant on the eastern division of the road, and offered the ticket as evidence of his right to travel on it, and offered to permit the conductor to punch the black figures for the number of miles travelled. The conductors uniformly refused to accept the ticket as fare, or to punch the black figures. Once he paid his fare, and on his statement that red figures had been punched for travel on the western division, the superintendent refunded the amount paid; and once a conductor allowed him to ride without paying fare, rather than to eject him from the car. The evidence tends to show that he stated to the conductors and to passengers that he understood his rights; that he was a lawyer, and had also taken counsel from the best lawyers in Indianapolis, and that it was necessary to enable him to maintain an action against the company for refusing to carry him as a passenger, that some force should be used in expelling him; and when the conductors urged him to pay his fare, he peremptorily refused to do so, and told them to put him off.

On the 10th of January, 1871, he took passage at Terre Haute to go, on the eastern division of the road, to Green-

castle, and on the call of the conductor for his fare tendered his one-thousand-mile ticket, containing no red figures upon it. The conductor declined to receive it; explained to him why he could not, and asked him to pay his fare. This he refused to do otherwise than by the ticket. He also refused to leave the train unless removed by force. The train was stopped, and the conductor, with the assistance of one or more employees of the company, ejected him. After he was removed from the car, he complained that he was sick, and the conductor took him into a sleeping car attached to the train and carried him to Brazil, where on the order of the conductor he left the train.

There is considerable conflict in the evidence touching the manner of the expulsion of the appellee from the car, the force used, and the injury sustained by him as the result of such expulsion. It will be unnecessary to notice it, however, in this opinion.

The court gave the following instruction to the jury:

"The special written contract embodied in the ticket in evidence, and subscribed by the parties, the court instructs you, entitled the plaintiff to travel a distance of one thousand miles over the whole line of railway under the defendant company's management, from the city of Indianapolis to the city of St. Louis, subject only to the condition not to transfer the ticket, and to permit the conductor to punch out the numbers corresponding to the miles travelled, without regard to the division or part of the road upon which he might choose to travel, and without regard to the color of the numbers remaining unused. The direction to the conductors printed upon the face of the ticket, to punch out the red figures for the miles travelled on the east division, and the black figures for those travelled on the west division of the line of road, formed, in the opinion of the court, no part of the contract binding upon the plaintiff; but even conceding that it did, it could not be extended beyond its terms; and, by its terms, it would only amount to an assent by the plaintiff to the miles travelled being so indicated when

he actually travelled over or upon both divisions, and could not be held to be a waiver of the plaintiff's right, if he so elected, to travel the whole one thousand miles upon either division of the road. No regulation or custom of the defendant company, in reference to the use of these tickets, which limited their operation to particular parts of the road, could affect the rights of a holder of such a ticket. The railway company chose to regulate this class of travel by a special contract, and so far as that contract, by its terms, defines the right of the ticket holder, it binds the company, and cannot be modified by the custom of the company in its interpretation of its meaning. Nor is there any argument of necessity or convenience to justify such modification by usage or custom, for there would have been no difficulty whatever in so wording the contract as to limit the right to travel upon the two divisions of the road in any proportion of distance that was thought proper or necessary. All the evidence shows that the plaintiff was expelled from the cars solely on the ground that he was not entitled to ride on the eastern division of the road after exhausting the red figures upon the ticket.

"It follows, from the interpretation I have given of the contract, that his expulsion was wrongful, and that for such wrongful act, and all injurious consequences resulting therefrom, the plaintiff is entitled to damages at your hands."

The instruction was excepted to, and its correctness is called in question by the motion for a new trial and the assignment of errors.

As we have seen, the line of railroad over wihch the appellee was authorized to travel one thousand miles by virtue of his ticket, was composed of the roads of two companies. Ordinarily, this might not be very material; a passenger ticket issued by the company for a single trip would show on its face the stations to and from which the person holding it would be authorized to use it. So a ticket authorizing the holder to travel one thousand miles containing one set of figures only, and nothing upon it indicating what part of

the road the holder might travel or use the ticket, would authorize such holder to use it anywhere on the road. In this case, the appellee made a special contract. His attention was called to the face of the ticket by the conditions upon the back of it, which he was required to sign before it was delivered to him. On the face of the ticket are two sets of figures; one above and the other below the ticket. The set above are black, those below are red. It also appears on the face of the ticket that the line consists of two roads, and that conductors are to punch out one set of the figures when the holder travels on one of the roads, and another set when he travels on the other. That the appellee had seen and read the figures and understood them, is shown by the conditions on the back of the ticket which he signed, and in which it is stated that " the miles travelled each trip to be indicated by conductor punching out corresponding figures on the opposite side," and, " I accept the above conditions, and have purchased this ticket with a full understanding of the same." The statement that the conductor would punch out black figures for passage on one road, and red figures on the other, was more than mere direction to the conductor. It was a part of the ticket itself. The appellee states in the conditions that he purchased it with a full understanding of the same. The " corresponding figures on the opposite side" referred to both sets and the road travelled upon. When the holder travelled upon the eastern division, the "corresponding figures" to the miles travelled would be red, and when the trip was on the western division they would be black, and thus the clear and unmistakable purpose as manifested by the ticket, the figures, and the agreement or conditions upon the back of it, would be carried out.

The instruction erroneously assumes that the statement relative to punching out figures formed no part of the ticket. In our opinion, it made no difference that the statement was on the side of and not above the name of the agent. It was upon the ticket and as much a part of it as if the agreement had read as follows:

"Mr. N. W. and J. A. Fitzgerald may travel one thousand miles on the St. Louis, Vandalia, Terre Haute, and Indianapolis Railroad, subject to the conditions on the back of this ticket. Conductors will punch out the black figures for passage on the St. Louis, Vandalia, and Terre Haute Railroad, and the red figures on the Terre Haute and Indianapolis Railroad.                    F. CHANDLER,

                                "Gen'l Ticket Agent."

"The meaning of an agreement is to be sought in all the words contained within the four corners of the instrument, and the order of the words, and the place they occupy in the paper, is not essential so long as they are placed therein, to evidence the actual agreement of the parties, and as a part of the contract." *Benedict* v. *Cowden,* 49 N. Y. 396. In that case a memorandum at the bottom of a note had been cut off and the note without the memorandum sold to an innocent purchaser. It was held that the maker might show that he signed the note with an understanding that the memorandum should be considered as part of the note, and that signing above would be the same as if signed below. The court held that the memorandum was a substantive part of the note and qualified it as if inserted in the body of the instrument.

In *Platt* v. *Smith,* 14 Johns. 368, it was held that words written in the margin of an award by the arbitrators in a distinct sentence are to be considered as a part of the award and to receive the same construction as if inserted in the body of it. The court says: "The words form a distinct sentence, and the meaning is the same, whether they be read in one place or another, after any distinct sentence." And see *Reed* v. *Drake,* 7 Wend. 345; *Springfield Bank* v. *Merrick,* 14 Mass. 322; *Barnard* v. *Cushing,* 4 Met. 230; *Shaw* v. *Methodist Epis. Society, etc.,* 8 Met. 223; *Hartley* v. *Wilkinson,* 4 M. & S. 25; *Johnson* v. *Heagan,* 23 Maine, 329; *Osborne* v. *Fulton,* 1 Blackf. 233; *Fletcher* v. *Blodgett,* 16 Vt. 26. In the case last cited, it was held that a memorandum on the margin of a promissory note, made at the time of signing, will be considered a part of the note, if it contain

an important qualification of the contract, and that it will be presumed that such memorandum was made at the time of signing, unless the contrary appears. The note and memorandum in that case were as follows :

"Payable in merchantable fulled cloth one year from the month of October next." } "$41.50.  JERICHO, April 15, 1840. For value received I promise to pay Frederic Fletcher, or bearer, forty-one dollars fifty cents one day after date, with interest annually.
(Signed)      "A. BLODGETT."

The body of the note, except the sum and date, was printed, and also the word "payable" in the margin. It was held that the memorandum controlled the time and manner of payment. The court, on page twenty-nine, says : "Courts must view these matters, in some sense, as business men do, else we could never hope to do justice between the parties to contracts. Contracts must be so interpreted as to speak the sense of the parties."

How is it possible to suppose that the appellee at the time of purchasing the ticket considered that he had the right to travel the whole one thousand miles over one division of the road ? He could travel that distance on the road. But the fact that a certain set of figures were to be punched out for passage on one division, and those of another set on the other division, shows that by the contract he was entitled to travel on that division to the extent and distance indicated by such figures and no more. He purchased the ticket with that understanding. To hold that he could travel the whole distance upon either division, is to hold the appellant bound by a contract entirely different from the one which she intended to make. It would render that part of the agreement, that the conductor should punch out the black figures for passage on the western division, and the red ones on the eastern division, entirely unmeaning. By the return of the stub annexed to the ticket, and which the conductor was directed to take up and return to the general ticket office, the western division would get credit for its share of the amount

received for the ticket, and the appellant become liable to account to the company owning that road for such share. Although the appellee had no knowledge of, and was not bound by, the contract between the appellant and the St. Louis, Vandalia, and Terre Haute Railroad Company, he did know that there were two divisions of the line of the road, and the statement about punching out the figures for passage on the respective divisions shows that it was the purpose of the company and the contract to limit his right to travel on each division to the number of miles indicated by such figures.

The view which we have taken of the contract renders it unnecessary for us to consider the right of the appellant to introduce parol evidence to aid in its interpretation. Some other questions are also discussed by counsel, but as the judgment must be reversed on account of the erroneous instructions before quoted, they become unimportant, and we need not consider them.

The judgment of the said Shelby Common Pleas is reversed, with costs. The cause is remanded, with instructions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

Petition for a rehearing overruled.