## STANLEY v. SUTHERLAND ET AL., ADMINISTRATORS.

REPLEVIN.—*From Officer Attaching Goods.—Defence.—Pleading.—Demurrer. —Bankruptcy Proceedings.—Assignee in.—Order of Bankrupt Court.*—To the complaint in an action to recover the possession of goods alleged to have been unlawfully taken and converted, the defendant answered alleging

| | |
|---|---|
| 54 | 339 |
| 133 | 586 |
| 54 | 339 |
| 137 | 447 |
| 54 | 339 |
| 148 | 186 |
| 151 | 672 |
| 151 | 673 |
| 151 | 674 |
| 151 | 675 |
| 151 | 678 |
| 54 | 339 |
| 161 | 382 |
| 54 | 339 |
| 168 | 480 |

that such goods were taken by him as sheriff upon a writ of attachment issued to him against the property of a third person, at the suit of certain of his creditors; that subsequently thereto, but prior to the bringing of this suit by the plaintiff, a petition was filed in the proper court by certain creditors to adjudge such third person a bankrupt; that subsequently to the bringing of this suit by the plaintiff such third person was adjudged a bankrupt, by such court, and an assignee in bankruptcy appointed; that on the application of such assignee, representing that plaintiff pretended to claim such goods by a conveyance from such bankrupt, and that they were in the possession of the defendant, as aforesaid, such court ordered that such goods be seized and sold by such assignee, as the property of such bankrupt, subject to the right of the plaintiff to claim the proceeds of the sale instead of such goods; that thereupon the defendant on demand surrendered such goods to such assignee who holds them subject to the claim of plaintiff. Prayer that the action abate until the plaintiff's rights are determined by such bankrupt court.

*Held,* on demurrer, that such answer does not state facts sufficient to constitute an answer either in bar or in abatement.

*Held,* also, that if such answer is good, then a reply thereto, averring that the order of such bankrupt court was made without any notice to the plaintiff, is also good.

*Held,* also, that the plaintiff could not be required to follow such goods into the bankrupt court, but had a right to prosecute his action to final judgment in the court where it was commenced.

*Held,* also, that the defendant had a right to show that the plaintiff's title to such goods was void, as obtained under a sale made in violation of the law of this state, but not that it was void under the bankrupt law.

SAME.—*Bankruptcy Proceeding.*—*Order of Bankrupt Court.*—*Proceeding by Assignee against Third Person.*—*Notice.*—Under the bankrupt law of the United States, (sec. 5063, R. S. U. S., p. 983,) in a proceeding by the assignee of the estate of a bankrupt to obtain an order of the proper bankrupt court to seize and sell property claimed by him to belong to such estate, where the title thereto is also claimed by another person, the latter is entitled to reasonable notice of such proceeding.

SAME.—Such section of the bankrupt law does not authorize the seizure and sale of property in the possession of another person under claim of title.

SAME.—*Bankrupt Law.*—The bankrupt law of the United States can not be administered in the courts of this state in proceedings in attachment.

SAME.—*Attachment.*—*Cause for.*—*Sale.*—A violation of the bankrupt law of the United States ·by a debtor, in making a sale of his property, is no ground for an attachment by creditors under the law of this state, as a sale of goods may be in violation of the former law and yet be valid under the latter.

PRACTICE.—*Appeal to Supreme Court.*—*Objection to Evidence.*—An objection to certain evidence, given on the trial of a cause, on the ground that it is

"incompetent", simply, presents no question to the supreme court on appeal.

SAME.—Where the record does not show what fact was proposed to be proved by a witness on the trial of a cause, on asking him a question which was excluded by the court below, such exclusion is not available as error on appeal to the supreme court.

EVIDENCE.—*Parol Evidence of Writing.*—Where, under the issues of a cause on trial, it becomes material as to whether a certain sale has been made, the validity of which is not in question, such fact may be proved by parol, even where such sale was made on an execution or a decree.

PRACTICE.—*Trial.*—*Instructions to Jury.*—Where, before evidence is introduced, the court trying a cause is requested to instruct the jury in *writing*, and during such trial evidence is introduced which has no force unless connected with another fact to be, but not yet, proved, it is not error for such court, at the time of its introduction, to *verbally* direct the jury that such evidence is not to be regarded unless such other fact be proved. Such direction not being an "instruction" to the jury.

SAME.—*New Trial.*—*Surprise.*—Where a party to a cause asks for a new trial thereof on the ground that he was surprised by the evidence of one of his own witnesses, and it does not appear that any steps had been taken by him before the trial to ascertain what such witness would testify to, nor that on another trial he will testify differently, such new trial should be refused.

SAME.—*Misconduct of Jury.*—Where the affidavit of a party to a cause asks for a new trial thereof on the ground of alleged misconduct of certain of the jurors who tried the cause, but does not state how he obtained his information of such alleged misconduct, and avers that if it had not been for such misconduct of said jurors the verdict of the jury would have been in affiant's favor, "as he believes", such new trial should be refused.

SAME.—*Affidavit of Juror.*—The affidavit of a juror can not be used to impeach the verdict of a jury upon which he sat at the time such verdict was rendered.

From the Cass Circuit Court.

*M. Winfield* and *S. T. McConnell*, for appellant.

*D. P. Baldwin* and *D. B. McConnell*, for appellees.

WORDEN, C. J.—This was an action by George C. Sutherland, against the appellant, Stanley, to recover a stock of goods or the value thereof, a schedule of which was set out, alleged to belong to the plaintiff and to have been in his possession, and to have been wrongfully and unlawfully taken from the plaintiff, by the defendant, and

converted to his own use. Issue, trial by jury, verdict and judgment for the plaintiff.

The appellant has assigned the following supposed errors.

1. The court erred in overruling the demurrer to the complaint.

2. The court erred in overruling the demurrer to the fifth paragraph of reply.

3. The court erred in overruling the motion for a new trial.

4. The court erred in rendering final judgment for the appellee.

We do not discover any objection to the complaint, and, as none is pointed out in the brief of counsel for the appellant, we assume there is none.

We take the following statement of the other pleadings involved from the brief of counsel for the appellant.

" The first paragraph of the supplemental answer is in the nature of a plea in abatement, verified. It alleges that the defendant seized the goods as sheriff on a writ of attachment issued against the property of William Sutherland; that Sutherland was subsequently adjudicated a bankrupt on the petition of his creditors; an assignee was appointed, who obtained an order from the Bankrupt Court on him for the delivery of the goods; and on demand of the assignee, and in obedience to the order of the Bankrupt Court, he surrendered the goods to him, who still holds them subject to the claims of the plaintiff, which he is ordered to and may assert in that court, and he asked that this suit abate until then.

"A demurrer was overruled to this plea, and George replied that he was not a bankrupt; that he purchased the goods in good faith from the bankrupt without reasonable cause to believe him insolvent; that the conveyance to him was a preference of an honest debt, and such a preference as was lawful under the laws of the state; that he was no party to the bankrupt proceedings and had no

notice thereof. A demurrer was overruled to this reply and exceptions taken.

" The ruling on the demurrer to the reply was, in effect, a sustaining of a demurrer to the plea in abatement, and holding it simply a plea in bar. This demurrer ought to have been sustained; and if the facts contained in the plea of abatement were proven, the suit ought to have abated. The facts alleged in the reply would not evade that issue."

It may be proper here to state some dates not appearing in the foregoing statement of the pleadings.

The writ of attachment against William Sutherland was issued on or about May 1st, 1870, on which the goods were seized by the defendant.

On May 7th, 1870, the petition in bankruptcy against William Sutherland was filed.

On May 10th, 1870, this action was commenced.

On June 3d, 1870, William Sutherland was adjudged a bankrupt.

On March 14th, 1871, the assignee was appointed.

On April 26th, 1871, the order for the delivery of the goods by the defendant, to the assignee, was made.

We are of opinion that the answer sets up no legitimate matter, either in abatement or in bar of the action, and therefore that the court committed no error in overruling the demurrer to the reply. The reply was good enough for the answer.

The answer goes upon the theory that as the defendant, as sheriff, seized the goods as the property of William Sutherland at the suit of attaching creditors; and as William Sutherland was afterwards adjudged a bankrupt, and as the court of bankruptcy had afterwards made an order for the delivery of the goods by the defendant to the assignee, which had been done in pursuance of the order, this suit ought to abate, and the plaintiff should prosecute his claim to the property in the court of bankruptcy.

We do not concur in this view of the question.

The plaintiff, when this action was commenced, had, according to the allegations of the complaint, a complete and perfect right of action, against the defendant, for taking and carrying away his goods. The fact that the defendant seized the goods as the property of William Sutherland, under process against the latter, can not change the aspect of the question.

If the property belonged to the plaintiff, as alleged in the complaint, the defendant can no more justify the trespass than if he had seized the property without color of authority.

As has been said, at the time the action was commenced the plaintiff had a complete and perfect right of action against the defendant; and he had a right to prosecute it in the court where he commenced it.

At that time too, it may be observed, though it is perhaps immaterial, the defendant had still the possession of the property. Subsequently, however, under an order of the court of bankruptcy, the defendant delivered the property to the assignee of William Sutherland, a bankrupt. This was done under proceedings in bankruptcy to which the plaintiff was in no way a party. We are unable to see how this fact can have the effect of abating the plaintiff's action, or of compelling him to lose the property or pursue it into the court of bankruptcy. We think he had a right to prosecute his action to final judgment in the court where he commenced it.

The case is, in principle, much like that of *Peck* v. *Jenness,* 7 How. U. S. 612. There, Jenness, Gage & Co. brought an action against Peck & Bellows, in one of the New Hampshire state courts, and issued an attachment by which they acquired a lien on property attached, and a right to make their debt out of it. Pending the action, Peck & Bellows became bankrupt, and one Howland was appointed their assignee, who appeared to the action, pleaded the bankruptcy, and alleged an order of the

bankruptcy court for the delivery of the attached property, by the sheriff, to him. But the court, notwithstanding this order of the bankruptcy court, gave judgment for the plaintiffs, to be levied of the property attached. This judgment was affirmed by the superior court of judicature of New Hampshire, whose decision was affirmed by the supreme court of the United States.

Counsel for appellant call our attention to the case of *Markson* v. *Haney*, 47 Ind. 31. But that case is not in point here. That case decides, in substance, where a district court of the United States has first acquired jurisdiction over a bankrupt, that jurisdiction is plenary and exclusive over the property of the bankrupt, so long as the proceedings in bankruptcy are pending. To make that case applicable, we should be compelled to assume the very point in dispute, that is, that the property attached was the property of the bankrupt. The plaintiff, in his complaint, alleges that the property was his; and he had a right to have that question tried in the court where he brought his action.

The order for the delivery of the goods by the defendant to the assignee, as exhibited in the answer, is as follows:

"Comes now W. A. Bradshaw, assignee herein, and files his petition, duly verified, setting forth that of the assets of said estate is a certain stock of goods, wares and merchandise, of the value of three thousand dollars, which were seized under attachment against the bankrupt about the 7th of May, 1870, by the sheriff of Cass county, in said district, and are now in boxes at Logansport, in said county, and suffering loss in its present state. That one George C. Sutherland, a son of the bankrupt, makes claim to said goods by virtue of a pretended conveyance, from his father, of April 28th, 1870, and he prays that said goods be removed to Indianapolis and sold, and the fund held instead of the goods, to answer such claim as the said George may establish; and it is thereupon ordered

that said assignee do remove said goods to the city of Indianapolis forthwith, and sell the [same] promptly at auction, for cash, discharged of liens, holding the proceeds instead of the goods to answer to such claim as may be established against them, first giving notice of the time and place and terms of sale by advertising the same in the Daily Indianapolis Journal, and a paper of general circulation printed at Logansport aforesaid."

Section 5063 of the bankrupt act, (R. S. U. S. 983,) provides that " whenever it appears to the satisfaction of the court that the title to any portion of an estate, real or personal, which has come into possession of the assignee, or which is claimed by him, is in dispute, the court may, upon the petition of the assignee, and after such notice to the claimant, his agent or attorney, as the court shall deem reasonable, order it to be sold, under the direction of the assignee, who shall hold the funds received in place of the estate disposed of; and the proceeds of the sale shall be considered the measure of the value of the property in any suit or controversy between the parties in any court. But this provision shall not prevent the recovery of the property from the possession of the assignee by any proper action commenced at any time before the court orders the sale."

A construction was given to this section of the bankrupt act in the case of Knight v. Cheney, 5 Nat'l Bank. Reg. 305. In that case, the assignee of one Hunt claimed a stock of merchandise in the possession of a certain firm doing business in the city of Providence, who refused to deliver the same to the assignee, claiming the goods by purchase from the bankrupt, and the assignee filed his petition in the district court, praying that a citation might issue against the firm, and to the members composing it, requiring them to show cause why the sale and transfer of the property should not be adjudged void. The parties respondent to that proceeding moved to dismiss the petition of the assignee, but the motion was overruled,

and they were required to answer the allegations of the petition.

On revising this decision in the circuit court, the judgment of the district court was reversed.

CLIFFORD, J.—In delivering the opinion of the court, said : " perishable estate of the debtor may be sold by order of the district court under the direction of the messenger or assignee, the fund received to be held in place of the estate sold, and the provision is made in case the estate of the debtor is liable to deterioration in value. Corresponding provision is also made in respect to the estate of the debtor which has come into the possession of the assignee, *or which is claimed by him,* where it appears to the satisfaction of the court that the title to the same is in dispute, and the enactment is that ' the court may, upon the petition of the assignee,' after reasonable notice to the claimant, his agent or attorney, ' order it to be sold under the direction of the assignee,' the funds to be held in place of the estate, as in case of the sale of perishable property.

" Discretionary power, it must be conceded, exists in the district court to order a sale of the estate of the debtor, where it appears that the title is in dispute, if it also appears that the debtor was in possession of the estate at the time that he was adjudged bankrupt, and that the estate was duly transferred to the assignee and that it remained in his possession at the time the sale was ordered. Grant that the power of sale under that section, extends to such a case as that supposed, still the concession does not sustain the decision of the district court under revision, as the estate in this case was never transferred to the assignee, and was not in his possession at the time the order of sale was passed. On the contrary, it was in the actual possession of the respondent firm, claiming absolute title to, and dominion over the same as their own property. Responsive to that suggestion, the proposition of the assignee is, that the estate in question is also claimed by him as such assignee, and that the power of sale under

that provision extends to any portion of an estate, the title to which is in dispute, where the same is claimed by the assignee as in this case.

" Taken literally the phrase, ' or which is claimed by him,' would perhaps appear to afford some support to the theory of the assignee, but it is impossible to adopt that view, as it would authorize the district judge in the settlement of the estate of the bankrupt, however small, to order the sale of the estate, if claimed by the assignee, of every inhabitant of his judicial district, and to direct the assignee to hold the funds received from the sales in place of the estates sold, and to compel the owners in possession of the same to appear in court and vindicate their titles, and to accept, if successful, the proceeds of the sale as the value of their property. Adopt that theory, and the constitution which was ordained to establish justice, becomes a mockery, as any man may be deprived of his property without due process of law, and no man, where the title to property is concerned, is entitled to a trial by jury, unless he commences his action ' before the court orders the sale.' Such a theory as applied to the facts of this case is not only repugnant to the constitution, but also to many of the other provisions of the bankrupt act, and especially to the third clause of the second section of the act, which contemplates that such controversies shall be prosecuted by an action at law or a suit in equity, and gives concurrent jurisdiction to the circuit and district courts to hear and determine the same as provided in the judiciary act. * * * Viewed in any light, the court is of the opinion that the district court does not possess the power under that provision to order in a summary way the sale of an estate, real or personal, although the same is claimed by the assignee, even though the title to the same is in dispute, if it also appears that the estate in question is in the actual possession of a third person, holding the same as owner and claiming absolute title to and dominion over the same as his own property,

whether derived from the debtor before he was adjudged bankrupt, or from some other former owner."

Whether or not the defendant's alleged wrongful seizure of the goods, under the attachment, was such a deprivation of the plaintiff's possession, as would, under the decision we have so largely quoted from, authorize the order of sale, we need not determine.

It is very clear that under the section of the bankrupt law set out, the claimant of the property is entitled to notice of any intended application for such order by the assignee. The case of *Knight* v. *Cheney, supra,* assumes that such notice is necessary. See also *Markson* v. *Heaney,* 1 Dillon, C. C., p. 497. The order of sale in this case does not purport to have been made upon notice to the plaintiff, though it recites that he claims the property. If a notice might be presumed, still it might be controverted, and the reply does controvert it, for it alleges that the plaintiff was no party to the proceedings and had no notice of them. If the answer might possibly be held good, as setting up this order of sale, the reply is good, for it shows that the order was a nullity, so far as the plaintiff was concerned, for the want of notice to him.

We pass now to the questions arising on the motion for a new trial. We make the following extracts from the brief of counsel for the appellant, as containing a statement of the positions assumed by them:

"The ninth, tenth and eleventh causes for a new trial involve the same questions and may be considered together. The ninth cause relates to evidence, and the tenth and eleventh causes to the instructions asked by the plaintiff and given by the court, and the instructions asked by the defendant and refused by the court. Concerning the evidence objected to, the court, over the objection of the defendant, allowed the plaintiff to prove by several witnesses the general signification of the word 'insolvency,' as understood among business men in the city of Logansport. Can there be any doubt that this

was an error? Is the word 'insolvency,' as used in the bankrupt act of 1867, a legal term to be construed by the courts, or does it depend for its signification upon the varied opinions of men in different localities? Has it one meaning in one place and another meaning in another place? Are traders in New York, Cincinnati and Indianapolis, selling merchandise to a trader at Logansport, to be affected by the local signification of the word at Logansport? We think not. The word used in the bankrupt act is for the courts to construe. There can be but one construction as applied to any kind of business, no matter where carried on.

" The seventh instruction asked for by the defendant was the law, (*Toof* v. *Martin*, 13 Wal. 40; *Buchanan* v. *Smith*, 16 Wal. 277;) and ought to have been given. The seventh, ninth, tenth, eleventh and twelfth instructions asked for by the plaintiff and given by the court, were clearly in conflict with those decisions and ought not to have been given. We desire to call special attention to the eleventh instruction of the plaintiff. In substance, the jury are instructed that, although George knew his father was embarrassed, yet supposed he had sufficient property to pay his debts, he would not have reasonable cause to believe him insolvent. This instruction is squarely in conflict with the decisions of the (U. S.) supreme court. Tested by those decisions, the condition in which the instruction assumes George knew his father to be, made him insolvent within the meaning of the bankrupt law. This made George liable to its provisions and invalidated his title to this property."

It is thus seen that the objections so far made, to the proceedings below, are based upon the theory that the action was governed by the bankrupt law; in other words, that if the sale of the goods by William Sutherland to the plaintiff was in violation of the bankrupt law, the sale was void, and the plaintiff could not recover. We are of a different opinion. We think the bankrupt law

had nothing to do with the question in issue. The assigneee of the bankrupt was not a party to the proceeding, nor was any one before the court who was entitled to question the validity of the transfer under the bankrupt law. Even an assignee could not go into a state court to set aside a conveyance made by the bankrupt in violation of the bankrupt act. *Markson* v. *Haney*, 47 Ind. 31, and authorities there cited. A sale of goods may be made in violation of the bankrupt law, and yet be entirely good under the law of this state. The defendant in this action was not in a condition that authorized him to question the validity of the sale under the bankrupt law. The controversy here is substantially between the plaintiff and the attaching creditors of William Sutherland. If the property was transferred by William Sutherland to the plaintiff, in violation of the bankrupt law, that furnished no ground on which any part of the creditors of William Sutherland could attach it; on the contrary it was a conclusive reason why they should not. Such attachment would defeat the end of the bankrupt law, which is the distribution of the assets among all the creditors, while the attachment would secure the assets to the attaching creditors and such others as might file their claims under it.

If property can be attached by creditors, in a state court, because it has been transferred by the debtor in violation of the bankrupt law, then the bankrupt law may be administered in a state court under the form of proceedings in attachment.

If the creditors of William Sutherland desired to avail themselves of any act of bankruptcy committed by him, they had a remedy by proper proceedings against him in the court of bankruptcy, but they had no right, on that ground, to attach his property in a state court.

Our statute provides that " all conveyances or assignments in writing or otherwise, of any estate in lands, or of goods," etc., " made or suffered with the intent to hinder,

delay, or defraud creditors," etc., "shall be void as to the person sought to be defrauded." "The provisions of this act shall not be construed to affect the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or assignor, or of the fraud rendering void the title of such grantor, or assignor." 1 R. S. 1876, p. 506, sections 17 and 20.

The attaching creditors and the defendant had a right to show that William Sutherland sold the goods to the plaintiff in violation of the statute above set out, for in such case they had a right to seize them, on the attachment, in the hands of the plaintiff. But they had no right to show that the sale was made in violation of the bankrupt law, for that would not authorize such seizure.

We proceed to other questions presented. The record shows that the plaintiff offered in evidence a notice of a commissioner's sale of certain real estate, published in the Logansport Journal. The evidence was objected to on the ground that it was "immaterial and incompetent." The objection was overruled, and exception taken by the defendant. The record does not show that the notice was given in evidence, but it sets out the notice, and then it says "notice offered in evidence; obj.; notice excluded; ex."

We think from the record that the notice was not given in evidence. It was first offered and the objection to its introduction overruled, but it seems to have been afterwards "excluded." But supposing it to have been given in evidence, we think no error was committed. We can not say it was "immaterial," and this was the only objection pointed out to it; the word "incompetent" not conveying the idea of any particular objection. It is objected here that the evidence was not admissible because "every thing which the advertisement presupposes had been left out," that is, the judgment or decree on which the sale was made, and the execution or copy of the decree. Had

this been made the ground of the objection below, it would have presented a different question.

On the trial, the plaintiff being on the witness stand, his counsel asked him the following question: "what is the fact about your farm, which you mortgaged to Ackerland, Wyler & Freeman, having been sold for that debt?" The question was objected to "because illegal question, and could not prove sale on decree or execution by parol." The objection was overruled, and the witness answered, "the farm was sold on the 15th day of last July, for that debt."

The question, it will be seen, did not assume that the sale enquired about was made on a decree or execution, nor did the answer disclose that such was the fact. The question sought simply to ascertain whether the farm had been sold for the debt mentioned. It did not seek to ascertain by whom or in what manner it had been sold, whether on execution or otherwise, nor indeed whether it had been conveyed. The question did not seek to give parol evidence of the contents of any deed or record. The validity of the supposed sale was not in controversy, and the fact only of the sale was enquired about. If the defendant had interposed, and asked the witness whether the sale to which his attention was called, was evidenced by any writing, or was made by any officer under any judgment or decree, and the witness had disclosed that it was, a different question would have been presented. Even if the sale had been made under a decree or judgment, it would seem, under the ruling in the case of *The Board, etc., of the Wabash, etc., Canal* v. *Reinhart*, 22 Ind. 463, that the simple fact of the sale might be proved by parol. We think there was no error committed in overruling the objection to the question.

While the plaintiff was testifying as a witness, the defendant's counsel propounded to him the following question: "at what place, and when and where, have

you been engaged in the dry goods business, and in what capacity?" On objection by plaintiff's counsel, this question was excluded. We can not say that in this there was any error. The defendant did not show what he proposed to prove by the witness, and hence it does not appear that he was in any way injured by the exclusion of the question. It has been repeatedly held by this court, that where a question is excluded, the ruling will not be held erroneous, unless the party propounding the question states what he proposes to prove, whereby it may appear that the matter is material and relevant.

Before any evidence was introduced, the court was requested to give its instructions to the jury, in writing. On the trial of the cause, the defendant introduced certain evidence to which the plaintiff objected, and thereupon the court said to the jury, verbally, "gentlemen of the jury, I instruct you that this evidence will have no bearing on the case, unless the plaintiff is connected with it some way, or the facts brought to the knowledge of the plaintiff." It is claimed that the court erred in making this statement to the jury, not because it was wrong in itself, but because it was not reduced to writing.

The statute provides, 2 R. S. 1876, p. 167, sec. 324, clause *fifth*, that "when the argument of the cause is concluded, the court shall give general instructions to the jury, which shall be in writing, and be numbered and signed by the judge, if required by either party." We do not think the statement made by the court to the jury comes within the letter or spirit of the statute requiring the instructions to be reduced to writing if required by either party. The statute applies to instructions to be given to the jury after the argument is concluded. But during the progress of a trial, it may be proper and necessary for the court to make statements and explanations to the jury, in order that they may properly understand, as the case progresses, the purpose for and conditions upon which the evidence is admitted. As an illustration, suppose a piece of evi-

dence is given, which of itself has no force unless some other fact is proved; the court might very properly say to the jury, at the time, that the evidence given was not to be regarded unless the other fact should be proved. The case before us is another illustration. We do not think such explanations or statements, thus made during the progress of a trial, need to be reduced to writing. They are not "instructions" within the meaning of the statute.

The defendant asked a new trial on the ground that he was surprised by the evidence of one of his own witnesses, Daniel Dillman. The affidavit shows that the defendant relied upon Dillman's testifying as he had formerly done in a deposition in another cause, and that he testified somewhat differently; but it does not show that before the trial he had conversed with the witness, or taken any steps to ascertain what his evidence would be, nor that since the trial he has ascertained that the witness will testify differently if another trial should be had. See *Ruger* v. *Bungan*, 10 Ind. 451. Taking the affidavit altogether, we can not say that error was committed in refusing a new trial on this ground. The same may be said in reference to newly discovered evidence.

The defendant asked that the verdict be set aside on the following affidavit:

"James Stanley, on his oath, says that he is the defendant in this action; that the verdict in this cause was unlawfully obtained, in this, to wit, that when the jury retired to deliberate they stood nine for the defendant and three for the plaintiff; that the three jurymen who were for the plaintiff, in order to induce the nine jurors who were for the defendant to vote for and return a verdict for the plaintiff, assured them that they knew of their personal knowledge that the defendant, James Stanley, this affiant, was only a nominal party to said suit; that the real controversy was between the plaintiff and Charles P. Kellogg & Co., of Chicago, Ill., a wealthy firm, worth two hundred thousand dollars or more, and non-

residents; that Stanley, the defendant, would not have to pay any judgment that plaintiff might recover against defendant; that it was a controversy between George C. Sutherland, a poor man and a neighbor, and Charles P. Kellogg & Co., non-residents and wealthy; and that it was only upon the aforesaid assurances and misconduct of the three jurymen, who were from the first for the plaintiff, that the other nine jurors consented to return a verdict for the plaintiff against the defendant. Defendant further says that said assurances were wholly false, and not supported by or founded upon any evidence heard on the trial; and further, that but for said misconduct of said three jurors the verdict would have been for the defendant, as affiant believes."

We think the closing words of the affidavit, "as the affiant believes," may and should be applied to the whole affidavit.

The affiant does not state how he obtained information of the alleged misconduct of the jury. It is not to be supposed that he was in the jury room, and it would probably do him injustice to suppose that he was furtively hovering around, outside, listening to the deliberations of the jury. If the information came to him from the bailiff in attendance upon the jury, it seems to us the affidavit of the bailiff ought to have been filed. If it came to him from some of the jurymen, it could not be received, for it has long been settled in this state that the affidavits of jurors can not be received to impeach their verdict; much less could their statements be received at second hand. The affidavit may have been true, as the affiant believed, and yet the information may have been derived from some of the jurors, whose affidavits could not have been received. Without determining what would be the effect of the alleged misconduct of the jury, if legally established, we are of opinion that the court committed no error in overruling the motion on the affidavit.

We have thus gone through with the questions arising on the motion for a new trial.

There is nothing in the fourth assignment of error. Judgment followed the verdict, of course, no reason why it should not appearing.

We find no error in the record, and the judgment must be affirmed.

The judgment below is affirmed, with costs.

NOTE.—PERKINS and BIDDLE, J. J., did not participate in the decision of this cause.