SHERWOOD, ASSIGNEE, v. BURNS ET AL.

BANKRUPTCY.—*Action by Assignee.—State Court.—Jurisdiction.*—Under section 711 of the Revised Statutes of the United States, p 134, approved June 22d, 1874, a State court has no jurisdiction of the subject-matter of an action, brought by an assignee of a bankrupt, to recover an alleged claim due the estate of the bankrupt, exceeding five hundred dollars.

From the Elkhart Circuit Court.

*R. M. Johnson, J. D. Osborn* and *E. G. Herr*, for appellant.

*J. M Vanfleet, J. H. Baker* and *J. A. S. Mitchell*, for appellees

WORDEN, J.—Amended complaint by the appellant, against the appellees, in two paragraphs, as follows:

"1. Bradford D Sherwood, as assignee of the estate of Myron E. Cole, in bankruptcy, complains of Albert Burns

and Leonard Dinehart, and says that said Cole, on or about the 2d day of November, 1869, was, on his own petition, adjudged a bankrupt in said State, and plaintiff was, and is, duly appointed an assignee of his estate in bankruptcy; that about one month prior to filing, by said Cole, of his petition to be adjudged a bankrupt, and when, in fact, said Cole was wholly insolvent, he owed his brother-in-law, said Dinehart, the sum of fourteen hundred dollars, evidenced by a promissory note; and at the same time Cole was in partnership with said Burns, in the grocery and provision business, in the town of Elkhart, in said county, and owned one undivided half of said stock of groceries, provisions, etc., of the value of three thousand dollars; and that, with a view and intent of shortly going into bankruptcy, and in contemplation of insolvency, and to give said Dinehart a preference as such creditor of his, said Cole proposed to said Dinehart, to sell the goods to Burns and turn over the proceeds thereof, so far as they would go, to Dinehart, in part discharge of said indebtedness; and for that purpose he, Cole, proposed to Burns to sell said undivided half of said stock of goods to him, and take his, Burns', notes for the greater part of the purchase-money, in order to secure to his brother-in-law, said Dinehart, said indebtedness; that said defendants each then had reasonable cause and good reason to believe, that said Cole was insolvent, and intended to take the benefit of the bankrupt act of the United States in a few days from that date, and that he was making these propositions and arrangements to make said Dinehart a preferred creditor, and to either pay or secure Cole's indebtedness to Dinehart, preparatory to being declared a bankrupt; and, to carry out such purpose, these defendants and said Cole then and there mutually agreed, that Burns should take the interest of Cole in said goods, and execute to Dinehart his notes for twelve hundred dollars, and pay Dinehart out of said goods about two hundred dollars, in satisfaction of said Cole's indebtedness to said Dinehart; and, to defraud and delay Cole's other creditors, and prefer said Dinehart, these parties did then

and there make and carry out said arrangement, the one-half of said stock of goods was sold and delivered by said Cole to said Burns, who purchased and took said interest in said goods, and in part pay therefor executed his note for twelve hundred dollars to Dinehart, with said Cole as surety, and agreed to pay the balance of said indebtedness out of said goods to Dinehart, who received the said demand against said Burns, and, in consideration therefor, relinquished his claim and gave up his note against Cole; that said Burns was at the time, and is now, solvent, and such note and demands against him, so received by said Dinehart, were and are of the value of fourteen hundred dollars, and at the same time said Cole was largely indebted to divers other creditors, whose claims amounted to many thousands of dollars against him; that, by reason of said fraudulent preference of, and payment to, Dinehart, the estate of said bankrupt has been greatly damaged, and the assets thereof greatly diminished, to wit, in the sum of two thousand dollars; that said Burns has sold and converted said goods to his own use, and said Dinehart still holds said note, which is unpaid.

, "2. And for second cause of action plaintiff says, that on or about the 2d day of November, 1869, Myron E. Cole filed his voluntary petition, in a court of bankruptcy in said State, to be adjudged a bankrupt; that he was then, and long prior thereto had been, wholly insolvent, and contemplating taking the benefit of the bankrupt laws of the United States, and that he is now adjudged a bankrupt by said court on his said petition; that plaintiff is the duly appointed assignee of the estate of said bankrupt; that, about a month prior to the filing of said bill and petition, said Cole was largely indebted to his brother-in-law, Leonard Dinehart, defendant hereto, to wit, in the sum of fourteen hundred dollars; and said Cole was also, at the same time, an equal owner of, and in partnership with said Burns in, a provision and grocery store, in the town of Elkhart, in said county, in the value of four thousand dollars ($4,000); that said defendants each then

knew of said Cole's various indebtedness to divers other persons, and had reasonable and good cause to believe he was insolvent; and, to benefit each of these defendants, and defraud the other creditors of Cole, and to give a fraudulent and unlawful preference to Dinehart, said defendants made and executed the following arrangement, to wit: They caused Cole to sell his said undivided half of said goods to Burns, for the sum of about fourteen hundred dollars, when it was, in fact, worth two thousand dollars; and, to secure Dinehart's claim and keep the proceeds out of the hands of other creditors, and of the assignee about to be appointed, and in contemplation of insolvency, Cole delivered up to him, Dinehart, the proceeds of said sale, viz., fourteen hundred dollars, in satisfaction, payment and discharge of Cole's indebtedness to him, which was then and there done by said Cole, and accepted by said Dinehart, in the manner following, to wit: The delivery of Burns' notes, given in payment for said goods, to the amount of twelve hundred dollars, with Cole thereon as surety, and two hundred dollars' worth out of other sources, viz., in goods which Burns agreed to pay to Dinehart; all of which was done with intent to defraud the other creditors of said Cole, and give a preference to said Dinehart over other creditors of the said bankrupt, Cole; and said Burns purchased said goods, to aid said Cole and Dinehart in perpetrating said fraud upon Cole's other creditors, and to secure a preference for said Dinehart; and said Dinehart then delivered to said Cole his, Cole's, note, and relinquished and gave up said indebtedness to him, Cole, amounting to fourteen hundred dollars; said Burns received, and to his own use converted, said goods; that said Burns was at the time of such transaction, and is now, solvent, and the demands and debts, so received by said Dinehart thereby, were then and are now of the value of fourteen hundred dollars; that, by reason of all of which facts and transactions, the other creditors of said Cole have been greatly damaged, and the assets of said estate greatly diminished, to wit, in the sum of two thousand dollars. Wherefore plaintiff

prays judgment in the sum of two thousand dollars, and all proper relief."

The defendants severally demurred to each paragraph of the complaint, and assigned for cause:

"1st. That the court has no jurisdiction of the persons of the defendants, or either of them;

"2d. That the court has no jurisdiction of the subject-matter of the action;

"3d. That the plaintiff has no legal capacity to sue;

"4th. That several causes of action have been improperly united;

"5th. That the complaint does not state sufficient facts to constitute a cause of action."

The demurrers were sustained, and the plaintiff excepted.

Final judgment for the defendants.

The errors assigned call in question the correctness of the ruling upon the demurrers.

We will consider the second cause of demurrer—that the court had no jurisdiction of the subject-matter of the action—first; as, if that cause was well assigned, it will be unnecessary to consider any of the other causes of demurrer.

We proceed, therefore, to enquire whether the court had jurisdiction over the subject of the action. The subject or object of the action may be stated, in a general way, to have been the collection of an alleged claim due the estate of the bankrupt.

In *Hastings* v. *Fowler*, 2 Ind. 216, it was held, under the former bankrupt act, that an assignee might sue for a debt in a State court. But, in the case of *Markson* v. *Haney*, 47 Ind. 31, 37, this court said: "The current of decisions, so far as we are advised, would seem to establish the proposition that State courts have no jurisdiction in such cases. *Newman* v. *Fisher*, 37 Md. 259; *Brigham* v. *Claflin*, 31 Wis. 607; *Voorhies* v. *Frisbie*, 25 Mich. 476." See, also, *Gilbert* v. *Priest*, 65 Barb. 444.

So, also, it was said in the case of *Stanley* v. *Sutherland*, 54 Ind. 339, 351: "Even an assignee could not go into a State

court to set aside a conveyance made by the bankrupt in violation of the bankrupt act. *Markson v. Haney,* 47 Ind. 31, and authorities there cited."

It may be observed, however, that neither in *Markson v. Haney,* nor in *Stanley v. Sutherland, supra,* was the observation thus made necessary to the decision of the cause. Neither of the cases depended upon the question whether an assignee in bankruptcy might properly sue in a State court. The observation made in *Stanley v. Sutherland* was based upon *Markson v. Haney,* without further examination or consideration; and the remark in *Markson v. Haney* only stated what, as far as the court was advised, " would seem " to have been established by the authorities. There were, doubtless, some decisions the other way, when *Markson v. Haney* was decided, to which the attention of the court was not called, and since that time the question has frequently arisen and been decided; and the authorities now quite clearly establish the proposition, that, under the bankrupt act, as it stood in 1867, an assignee might bring such action in a State court. Such was the decision of the Supreme Court of the United States in the case of *Claflin v. Houseman,* 3 Otto, 130. See, also, *Cook v. Whipple,* 55 N. Y. 150; *Boone v. Hall,* 7 Bush, 66; *Stevens v. Mechanics' Savings Bank,* 101 Mass. 109; *Otis v. Hadley,* 112 Mass. 100; *Mays v. Manufacturers' Nat'l Bank,* 64 Pa. State, 74.

But section 711, page 134, of the Revised Statutes of the United States, which were approved June 22d, 1874, provides as follows:

" The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several States:

" First. Of all crimes and offences cognizable under the authority of the United States.

" Second. Of all suits for penalties and forfeitures incurred under the laws of the United States.

" Third. Of all civil causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a

common-law remedy, where the common law is competent to give it.

"Fourth. Of all seizures under the laws of the United States, on land or on waters not within admiralty and maritime jurisdiction.

"Fifth. Of all cases arising under the patent-right or copyright laws of the United States.

"Sixth. Of all matters and proceedings in bankruptcy. ·

"Seventh. Of all controversies of a civil nature, where a State is a party, except between a State and its citizens, or between a State and citizens of other States, or aliens.

"Eighth. Of all suits or proceedings against embassadors or other public ministers, or their domestics or domestic servants, or against consuls or vice consuls."

As Congress has power to pass "uniform laws on the subject of bankruptcies throughout the United States," and as the judicial power of the United States extends to all cases in law and equity arising under the Constitution and laws thereof, it has power, beyond doubt, to give the Federal courts exclusive jurisdiction "Of all matters and proceedings in bankruptcy." We are of opinion, that the section of the act of Congress, above set out, vests exclusive jurisdiction of all matters and proceedings in bankruptcy, in the Federal courts. There is no room to infer that Congress intended that the State courts should have or exercise any jurisdiction in such cases.

The clause in relation to matters and proceedings in bankruptcy is so grouped and connected with other matters so peculiarly within the exclusive jurisdiction of the Federal courts, that the intention to exclude State jurisdiction is unmistakable.

And we think the action here was a matter or proceeding in bankruptcy, within the meaning of the law. The assignee derives his authority from, and can sue in any court only by virtue of, the bankrupt law. The suit was only one of the steps to close up and settle the bankrupt's estate.

In the case of *Claflin* v. *Houseman, supra,* the court

Sherwood, Assignee, *v.* Burns *et al.*

notice the provision of section 711, above quoted, and, without passing upon its effect, say, at the close of the opinion, " Without discussing the subject further, it is sufficient to say, that we hold that the assignee in bankruptcy, under the Bankrupt Act of 1867, as it stood before the revision, had authority to bring a suit in the State courts, wherever those courts were invested with appropriate jurisdiction, suited to the nature of the case." It may be observed, that, in that case, the State court had taken jurisdiction before the revision of the statutes of the United States.

In the case before us, the amended complaint was filed February 21st, 1874, but the demurrer thereto was filed March 12th, 1875. The demurrer was filed after the revision of the Statutes of the United States, which took away whatever jurisdiction the court had had over the subject-matter of the action before that revision, and was, in our opinion, correctly sustained. An amendment to the bankrupt act, approved also June 22d, 1874, U. S. Stat. at Large, vol. 18, part 3, p. 178, adds the following words to the original 1st section of the act, viz.: " *Provided,* That the court having charge of the estate of any bankrupt may direct that any of the legal assets or debts of the bankrupt, as contradistinguished from equitable demands, shall, when such debt does not exceed five hundred dollars, be collected in the courts of the State where such bankrupt resides having jurisdiction of claims of such nature and amount."

It does not appear in this case, that the court of bankruptcy had made such direction as that contemplated by the above provision, nor is the case one that comes within the terms of the proviso.

The judgment below is affirmed, with costs.