Nov. Term,
1860.

Borum
v.
Fouts.

*R. Crawford*, for appellee.

---

## Borum v. Fouts and Others.

As a general rule, every communication which the client makes to his legal adviser, for the purpose of professional advice or aid, upon the subject of his rights or liabilities, is to be deemed confidential.

This rule is not confined to communications made for the purpose of enabling an attorney to conduct a cause in Court; but includes communications made by one to his legal adviser, while engaged and employed in that character, and where the object is to get his legal opinion as to his employer's legal rights and liabilities.

Such communications, to be privileged, must have been addressed to an attorney in his professional character, with a view to legal advice, which, as an attorney, it was his duty to give.

When the terms of a contract have been agreed upon between the parties, and an attorney is afterward employed, as a scrivener merely, to reduce the contract to writing, and no inquiry is made of him as to its legal effect, communications made to him, while thus engaged, will not be regarded as privileged.

Our statute, fixing the legal rate of interest, &c. (1 R. S. 1852, pp. 343, 344), was not intended to inhibit a party from having two prices for his property—one a cash price, and the other a time price ; but, if a price is agreed upon, and time is given, no greater rate of interest than the statute allows can legally be contracted for.

Under our statute usury, or illegal interest, may exist without the actual loan of money.

When a mortgagor appears to the action to foreclose, and pleads usury in the transaction, his vendee of the mortgaged premises, with his consent, may assume the same defense.

Nov. Term,
1860.

BORUM
v.
FOUTS.

Tuesday,
November 27.

APPEAL from the *Tippecanoe* Circuit Court.

DAVISON, J.—The appellant, who was the plaintiff, brought this action against the appellees, to foreclose a mortgage upon real estate in *Tippecanoe* county. The following is the case made by the complaint. The plaintiff, on *September* 11, 1854, sold the land described in the mortgage to the defendant, *Jacob Fouts*, who, at that date, executed to him six promissory notes: the first for $1,060, due *December* 25, 1855; the second for $1,120, due *December* 25, 1856; the third for $1,180, due *December* 25, 1857; the fourth for $1,200, due *December* 25, 1858; the fifth for $1,500, due *December* 25, 1859; and, the sixth for $1,280, due *December* 25, 1860. The first three notes had been paid. The fourth was alone due, and unpaid, when the complaint, in this case, was filed; and the object of the present suit was to foreclose, as to the last three notes. After the execution of the mortgage in *October*, 1856, *Fouts*, the mortgagor, conveyed the mortgaged premises to *Nathan Fouts*, who, in *November* then next following, died, leaving *Mary Fouts*, his widow, and the defendant, *John A. Fouts*, his heirs at law; said *Mary* is now intermarried with *Calvin McMillen*. *Jacob Fouts* answered: 1. By a general denial. 2. That the notes, in suit, included usurious interest, at 10 per cent. per annum, from *September* 11, 1854. 3. That he, *Jacob*, at the date of the notes, purchased 170 acres of land of the plaintiff at $40 per acre, in all $6,800; of which, by the contract of sale, $1,000 was to be paid *December* 25, 1854; $1,000, *December* 25, 1855; $1,000, *December* 25, 1856; $1,000, *December* 25, 1857; $1,000, *December* 25, 1858; $1,000, *December* 25, 1859; and $800, *December* 25, 1860. That the first payment was not to draw interest; but the second, third, and fourth payments were, at 6 per cent. from *September* 11, 1854; and the fifth, sixth, and seventh were to draw 10 per cent. per annum: and, that the notes, for the recovery of which this suit was instituted, were given for the last three

Nov. Term, payments, the same not bearing interest on their face, but
1860.     including 10 per cent. interest from their date.

BORUM          To this answer the plaintiff replied, denying the usury
v.        and alleging that the notes were given for a valid considera-
FOUTS.    tion, &c. *McMillen* and wife, by the consent of *Fouts*,
          answered the complaint by adopting. the second and third
          paragraphs of his answer, setting up usury in the notes.
          And to their answer, so far as it set up usury, the plaintiff
          demurred, on the ground that *Nathan Fouts*, as shown by
          the complaint, had purchased the lands subject to the notes
          and mortgage, and that neither he nor his heirs had the right
          to set up usury: but the demurrer was overruled, and the
          plaintiff replied. *John A. Fouts*, the heir at law of *Na-
          than Fouts*, being an infant, answered by guardian *ad litem*.

The jury to whom the issues were submitted, found, gener-
ally, that there was then due the plaintiff $1,000; that
on *December* 25, 1859, there would be due him $1,000; and,
that $800 would be due him on *December* 25, 1860: and
further, they found, specially, to the effect, that "in *Septem-
ber*, 1854, *Jacob Fouts* bought 170 acres of land of the plain-
tiff, at $40 per acre, making the aggregate amount of $6,800.
That the three notes sued on, were given for part of the pur-
chase-money, and were usurious in this: to the principal, in
each note, there was added 10 per cent. per annum, for the
time each had, respectively, to run; and such interest was
so added in consideration of the delay of payment."

Plaintiff moved for a new trial; but his motion was over-
ruled and a decree of foreclosure rendered on the verdict.

The plaintiff, at the proper time, moved to suppress the
deposition of one *John J. Taylor*, taken by the defendants
to be read in evidence in the cause; but the Court refused
the motion and he excepted. This refusal constitutes the
first error assigned. *Taylor*, in his deposition, says he was
an attorney at law, and resided in *Attica*, in this State,
where he had a law-office. At the request of the plaintiff
he drew the notes then shown to him, being the same now in
suit, also a title-bond, which contained the written contract
between the parties.

None of the defendants were present when the notes and

bond were drawn. The price of the land, described in the complaint, was $40 per acre; the whole amount, $6,800. The deposition, after setting forth the terms of payment for the land, as stated in the third paragraph of the answer, says: The plaintiff directed him, *Taylor*, to calculate interest on the three last payments at 10 per cent. per annum; to add such interest into the body of each of the last three notes, respectively; and his, *Taylor's*, recollection was, that the 10 per cent. was so added for the purpose of evading the statute against usury. The deposition further states, that *Taylor*, while drawing up the notes and bond, did not consider himself as acting in the capacity of an attorney at law, but merely as a scrivener; that "he was employed, by the plaintiff, to draw them up, and that was an end of it."

The appellant contends, that the communications made to the witness, as shown by the deposition, he being an attorney at law, are privileged, and, for that reason, the motion to suppress should have been sustained. As a general rule, "Every communication, which the client makes to his legal adviser, for the purpose of professional *advice* or *aid*, upon the subject of his rights and liabilities, should be deemed confidential." 1 Greenl. Ev. § 240. This rule is not strictly confined to communications, made for the purpose of enabling an attorney to conduct a cause in court; but extends, so as to include communications made by one to his legal adviser while engaged and employed in that character, "and when the object is to get his legal opinion as to the employer's legal rights and liabilities." *Foster* v. *Hall*, 12 Pick. 89. But such communications, in order to be privileged, must be addressed to an attorney in his professional character of a legal adviser, with a view to legal advice which, as an attorney, it was his duty to give. 3 Phil. Ev., 4 Am. ed., 130, n. 62. In the case at bar, *Taylor* being an attorney at law, the question to settle is: Were the communications, made to him by the plaintiff, intended to elicit his legal advice: in other words, were they addressed to him as a legal adviser? As we understand the deposition, the parties had agreed on the terms of the contract before the attorney was called on. No inquiry was made of him as to its legal effect, or the

rights and obligations under it. He was employed, not to give legal advice, but simply to draw the notes and bond, as directed by his employer. There is, indeed, nothing in the record from which it can be inferred that the relation of attorney and client, in any respect, subsisted between him and the plaintiff, or that he was employed in any capacity other than that of a mere scrivener. If this exposition of the deposition be correct, and we think it is, *Taylor* was not professionally consulted, within the scope of his business as an attorney; and the result is, the communications made to him, by the plaintiff, are not privileged. *Jenkinson* v. *The State*, 5 Blackf. 465.—*Reed* v. *Smith*, 2 Ind. 160.—*Hatton* v. *Robinson*, 14 Pick. 416.—*Brumwell* v. *Lucas*, 2 Barn. & Cresw. 745. The refusal to suppress was not, in our judgment, erroneous.

But the appellant assumes another ground. He says that, upon all the facts, proved by the evidence, the transaction was not usurious; that it was a sale of land, on long time, at a higher price than the cash or short-time price, at 6 per cent. interest thereon. The statute enacts, that "Interest upon the loan or forbearance of money, goods, or things in action shall be at the rate of six dollars a year upon one hundred dollars;" and, "If a greater rate of interest shall be contracted for, or received, or reserved, the contract shall not, therefore, be void; but, if in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the defendant shall recover cost, and the plaintiff shall recover his principal without interest." 1 R. S. 1852, pp. 343, 344. The legislature, by these enactments, did not intend to prohibit a party from having two prices for his property; one a cash price, and the other a time price. But they did intend to inhibit the contracting for, receiving, or reserving illegal interest; and the inquiry is: Did the parties, in this instance, contract for such interest? The jury, in their special finding, have answered this question affirmatively; and their finding seems to be consistent with the evidence. There is nothing in the transaction, in any degree, tending to show that the parties, in making the contract, contemplated "a

time price" for the land; indeed the evidence sufficiently proves that, as part of the contract of sale, it was understood that the notes in question should each bear interest, at the rate of 10 per cent. per annum until they, respectively, matured. But it is insisted that, in this case, there being no loan of money there can be no usury. This position accords with at least one decision of this Court. See *The State Bank* v. *Coquillard*, 6 Ind. 234. But the facts, upon which that case was decided, occurred before the enactment of our present statute against usury. See 1 R. S., pp. 343, 344, above quoted. And, we have recently held, that "Under that statute, usury or illegal interest may exist without the actual loan of money." *Crawford* v. *Johnson*, 11 Ind. 258. The case just cited was a suit to foreclose a mortgage. Upon the trial it was proved that the notes, secured by the mortgage, were given for the purchase-money of real estate; were drawn for $8,000, the price of the land, with 6 per cent. interest, and for an additional 2 per cent. interest on the $8,000, separate notes were given by the vendee. *Held*, That the transaction was usurious. This decision evidently applies to the case before us, and we perceive no reason why it should not be followed. As to the facts, the present case, and the one cited, are not essentially different. In each the parties "contracted for" a rate of interest over 6 per cent. per annum; and, as we have seen, the statute renders such contract illegal, and directs a forfeiture of all the interest.

The next inquiry relates to the answer of *Calvin McMillen* and *Mary McMillen*. These defendants claim an interest in the mortgaged premises, under a conveyance by *Jacob Fouts*, the mortgagor, to *Nathan Fouts*, the former husband of *Mary McMillen*. Their answer was made with the consent of *Jacob Fouts*, and simply adopts his answer, setting up usury in the notes. The objection is, that *Nathan Fouts* had purchased the lands subject to the mortgage, and that neither he nor his heirs had the right to set up usury. We have decided that "a vendee of real estate, who purchased subject to a mortgage tainted with usury, can not avail himself of that defense against a bill of foreclosure." *Stevens* v. *Muir*, 8 Ind. 352. But, in that case, the mortgagor was not a

party, nor had he consented to the defense set up by his vendee. And, in the opinion delivered, it is said "that such vendee might *avail himself of that defense* with the consent of the party who made the usurious contract, and who was to suffer by it." In *Wright* v. *Bundy*, 11 Ind. 398, it was held that "when a debtor does not set up the defense of usury, a third person can not without the debtor's consent." From these positions, it would seem to follow that where a mortgagor appears to the action to foreclose, and pleads usury in the transaction, his vendee of the mortgaged premises, with his consent, may assume the same defense. We know of no adjudicated case adverse to this conclusion, and we are inclined to adopt it.

In this case, the mortgagor not only appeared and pleaded, but consented that the other defendants, as heirs of his vendee, might adopt the same defense; and the result is, the ruling upon the demurrer was not erroneous.

*Per Curiam.*—The judgment is affirmed, with costs.

*Chase* and *Wilstach*, for appellant.

*Vinton* and *Miller*, for appellee.