NEWKIRK *v.* BURSON and Others.

CONTRACT OF SALE.—USURY.—In a contract for the sale of lands, it was agreed between the vendor and vendee, by parol, that the sale should be at $80 per acre, upon a credit of ten years, and that interest at the rate of ten per cent. should be paid annually, but the contract was not executed so as to be binding upon either party. Afterwards, a written contract was entered into, by which the vendee agreed to pay a specified gross sum for the land, payable in ten annual installments, the first nine being for a sum equal to ten per cent. on the value of the land at $80 per acre, and the last for the value of the land at the price named and ten per cent. added. Nothing was said in the written contract about the price per acre, or about interest. The legal rate of interest at the date of the contract was six per cent.

*Held*, that the contract was not tainted with usury.

APPEAL from the *La Porte* Circuit Court.

RAY, J.—*Newkirk* brought suit in the *La Porte* Circuit Court against the widow, heirs and administrators of *Samuel Burson*, deceased, to foreclose a mortgage given by *Burson* in his lifetime to *Newkirk*, intended to secure the purchase money of a farm sold by *Newkirk* to the deceased. The cause was once before tried in the Circuit Court, and the judgment then rendered was reversed by this court. 21 Ind. 129. The contract and mortgage were included in one instrument, dated *April* 16th, 1855, and set forth that *Newkirk* had that day sold to *Burson* a farm near *La Porte*, which is described, and for which *Burson* was to pay as follows: $1,650, annually, in one, two, three, four, five, six, seven, eight, and nine years from that date, and $18,150 in ten years, to which was added this condition: that if *Burson* should, at any time within said ten years, pay to *Newkirk*, in addition to the annual installments then due, the sum of $16,500, he should receive the same, and it should be in full satisfaction of the whole debt, except as to the annual installment then next to fall due, and as to that there should be an abatement therefrom, at the rate of ten per cent. per annum on $1,650, from the date of such payment; and the payment of the sum of $16,500, and the

amount of said installment then next to fall due, after such abatement, should be in full satisfaction of said several sums of money; and in case *Burson* should at any time pay to *Newkirk*, in addition to the sum to be paid annually, any part of the last mentioned installment, not less than $500 at a time, it should be received; and in case of the payment of any such additional sum less than the whole, then, and in every such case, there should be a deduction, equal to ten per cent. on such additional sum, from each of said annual installments, except the one next to fall due, and as to that, at the rate of ten per cent. per annum, and such payment should operate as a credit on such annual installments, at the date of the payment, to the amount of ten per cent. on the additional sum so paid.

The defendants, before the first trial, filed an answer in two paragraphs, the first being a general denial. The amended second paragraph sets up, in substance, that the contract and mortgage were usurious; that the plaintiff agreed to sell and convey to *Burson* certain parcels of land, described in the contract and mortgage, containing about two hundred and eight acres, for eighty dollars an acre, amounting to $16,650; that it was agreed between the parties that *Newkirk* should forbear and give day of payment of the sum of $16,500 of the purchase money, for and in consideration of which *Burson* should and did pay down $150, and should and did agree to pay to *Newkirk* the sum of $16,500, and $1,650 annually, as interest thereon, and that they caused the instrument to be so drawn as to avoid the provisions of the law against usury. The paragraph also sets up certain payments on the contract, which are specified in a schedule attached to the answer. A demurrer was filed to this answer and overruled and exceptions taken.

*Newkirk* replied by a general denial, and by a second paragraph, alleging that the payments were voluntarily made on the installments as they fell due, and that he had, and did so apply them.

The cause was tried by a jury, who found a special ver-

dict, partly as a distinct statement of the facts, and partly in answer to questions stated in writing. The facts found were, that *Samuel Burson*, deceased, in his lifetime, executed the agreement and mortgage sued on, and that the defendants are his administrators and heirs at law; that, according to the tenor of the agreement, there was then, *January* 5th, 1867, due on account of the mortgage debt, $11,013.87; that there was usury in the agreement, in this, that the principal sum was $16,500, due *April* 16th, 1865; that the sums of $1,650, severally payable in one, two, three, four, five, six, seven, eight, and nine years from the date of the agreement, together with a like sum included in that due ten years after the date of the agreement, were for interest at the rate of ten per cent. on said principal sum; that the deceased, in his lifetime, and his representatives since his death, have voluntarily paid on said interest, as such, the sums severally becoming due on the 16th day of *April*, 1856, 1857, 1858, 1859, and 1860, and that there was then due, after allowing the effects of the usury, the sum of $5,438.50.

In answer to the interrogatories the jury found, 1. That there was a verbal contract entered into between the parties prior to the written contract, which verbal contract was for $80 per acre, with ten per cent. interest for the term of ten years. 2. That there was no evidence that the contract, other than the one read in evidence, was ever reduced to writing, but that the jury believe that the "intentions of the contract" (*Sic*) were inserted in the written contract in such a way as to evade the laws made and provided in such cases, and that the verbal contract was entered into between the parties in the month of *April*, 1855, on the railroad, near *B. M. Newkirk's* house. 3. That there was no evidence that *Burson* took possession or paid any part of the purchase money prior to the written contract. 4. That by the verbal contract there was to be paid $80 per acre, on ten years time, and ten per cent. interest, payable annually. In the written contract there was to be paid $1,650 annually, for

ten years, and at the end of that time, $16,500; that the contract drawn up by *Osborn* was the contract finally agreed upon by the parties, but it was wrong, in being usurious.

Thereupon the plaintiff moved the court, under 2 G. & H., § 337, p. 206, to render a judgment for the larger sum of $11,013.87, instead of said smaller sum of $5,438.50, on the ground that the finding for the smaller sum is inconsistent with the facts so specially found by the jury. This motion was overruled and exceptions taken. The plaintiff then filed a motion for a new trial on the grounds—

1. That the verdict and finding of the jury are contrary to the evidence, in so far as the jury found that the contract sued on was corruptly and usuriously entered into, and have made an abatement, on that ground, from the amount due according to the terms of the contract.

2. That the finding of the jury is not sustained by sufficient evidence, is contrary to law, and is inconsistent with the special finding of facts.

The motion for a new trial was overruled. The plaintiff excepted, and filed a bill of exceptions incorporating all the evidence.

A judgment was entered for the lesser sum and for a foreclosure of the mortgage.

In his work on contracts, Mr. *Parsons* uses this language : " The simplest definition of usury is, the taking of more interest for the use of money than the law allows. There must, therefore, be the use of money ; which may be by a loan, or by the continuance of an existing debt. That is, one may now lend money to another, and so give him the use of it, or may agree with him that he shall not now repay a sum which has become due, and so permit him to use it. To the one or the other of these classes all contracts for the use of money may be referred." Vol. 3, 107.

In the case before us, it is clear that the object of the parties to the contract was not to make "a loan" of money, but the sale and purchase of land. It seems equally apparent that there was no "continuance of an existing debt."

The verbal contract to purchase the land at $80 per acre, on ten years time, with ten per cent. annual interest, created no legal obligation upon either party. It made no existing debt. The only legal contract, as shown by the answers of the jury to the special interrogatories, was the one upon which the suit is brought. That contract is for the sale of the property on a credit, and there can be no question that a party may fix his own price in such a contract. If there had been any valid and legal sale of the property for a sum fixed, and a debt thus created, any extension of any portion of such indebtedness at a rate of interest greater than that allowed by law would have been usurious. But in this case there was no debt until the instrument was executed, and under that instrument, therefore, there was neither a loan of money nor the continuance of a then existing debt. Under the special answers of the jury, therefore, there could be no usury in the contract. The fact that the purchaser had the right to make the transaction a cash one at any moment he might so elect, is only additional evidence on the face of the contract that the purpose of the parties thereto was the purchase and sale of the property, and not the receiving of illegal interest on the money due.

In the case of *Hogg* v. *Ruffner*, 1 Black 115, in speaking of the statute of this State on the subject of usury, Mr. Justice GRIER says: "To constitute usury, there must either be a loan and the taking of usurious interest, or the taking of more than legal interest for the forbearance of a debt or sum of money due. This statute does not profess to enlarge the common law definition of the term, while it aims to include the common devices resorted to by usurers to evade its penalties. But it is manifest that if A propose to sell to B a tract of land for $10,000 in cash, or for $20,000, payable in ten annual installments, and if B prefers to pay the larger sum to gain time, the contract cannot be called usurious. A vendor may prefer $100 in hand, to double that sum in expectancy, and a purchaser may prefer the greater price with the longer credit; and one who will not distin-

guish between things that differ, may say, with apparent truth, that B pays a hundred per cent. for forbearance, and may assert that such a contract is usurious; but whatever truth there may be in the premises, the conclusion is manifestly erroneous. Such a contract has none of the characteristics of usury; it is not for the loan of money or forbearance of a debt."

If this position be correct, it cannot be of any importance at what times and in what amounts the payments upon a credit sale of land are made, and it may not be clear to those even who can "distinguish between things that differ," how the learned judge could, in that opinion, indorse the case of *Crawford* v *Johnson*, 11 Ind. 258, unless, indeed, it be assumed that in that case the sale of the land had been completed at a fixed price for cash, and that time was subsequently given and illegal interest exacted for the forbearance. The same is true of the case of *Borum* v. *Fouts*, 15 Ind. 50, and except upon the assumption of a completed contract of sale for a fixed price, and a subsequent forbearance at an illegal rate of interest, these cases are not, in our opinion, consistent with the law as stated, we think accurately, in *Hogg* v. *Ruffner*, *supra*.

The case of *Beete* v. *Bidgood*, 7 Barn. & Cress. 453, is strongly in point. There a contract was made for the sale of an estate at £16,000, and it was agreed that this should be paid by installments at certain future days, with interest calculated at six per cent. per annum; and promissory notes were given for these sums, compounded of the installments and that which was called interest. It was held that the whole must be considered as the purchase money of the estate, and that the bargain was not usurious. Lord TENTERDEN, C. J., said: "The agreement was founded partly on what was considered the present price of the estate, and partly upon what was considered its price if paid for at a future day. The only difficulty has been occasioned by calling the difference between these two prices interest. But it is our duty to look, not at the form and words, but at the

substance of the transaction; and as, on the one hand, we should not pay attention to the words of the contract, if the substance of it went to defeat the provisions of the statute of 12 Anne c. 16; so, on the other hand, we ought not to rely upon the words, so as to defeat the contract, if in substance the transaction was legal. It appears to me, that in substance this was a contract for the sale of the estate at the price of £20,800, to be paid by installments; in that there was no illegality."

The judgment should, under the finding, have been entered for the sum due by the terms of the written contract.

The judgment is reversed, with costs, and the cause remanded, with directions to the Circuit Court to render judgment for the appellant for $11,013 87.

*J. B. & W. Niles* and *W. C. Hannah*, for appellant.
*J. Bradley*, for appellees.

