The Chicago and Indiana Coal Railway Company v. McDaniel.

No. 15,051.

## The Chicago and Indiana Coal Railway Company v. McDaniel.

PLEADING.—*Railroad.*—*Action for Damages.*—*Sufficiency of Complaint.* —*When Plaintiff Rightfully on Defendant's Car.*—*Flat-Car.*—*Side-Track.*—*Lumber Company.*—*Contributory Negligence.*—In an action against a railroad company for damages caused by the alleged negligence of the railroad company, it appears, from the complaint, that the plaintiff, at the time of receiving the injury complained of, was upon a flat-car helping to unload lumber from the car, a part of which he had purchased, and that he was thus helping at the request of the lumber company, to which the car-load of lumber was consigned, and by which it was owned; that the car-load of lumber was upon a side-track provided by the railroad company to deliver cars upon, to be unloaded by the owner of cars thus delivered; that while so engaged in unloading the lumber the plaintiff, without any fault on his part, but wholly by the fault and negligence of the defendant, was injured.

*Held*, that the plaintiff was rightfully on the car, if there by the invitation of the lumber company, and that being requested by the lumber company to assist in unloading lumber from the car, he had a right to be at any proper place to do the work, whether such place be on or off the car.

*Held*, also, that it is unnecessary that the complaint should show that there was an executed contract between plaintiff and the lumber company to purchase a particular or separate portion, or all, of the lumber upon the car; that if plaintiff had purchased a bill of lumber of the lumber company, a part of which was upon the car not separated from the other, and he entered upon the car, at the request of the lumber company, to assist in unloading the car, he was there of right.

*Held*, also, that the general averment of freedom from contributory negligence is sufficient as embracing all specific averments that might be made to that effect.

SAME.—*How Construed.*—A pleading is not only to be judged by its general scope, but the language used must be given a reasonable and fair construction, and if by such construction the pleading will withstand a demurrer, the demurrer to it should be overruled.

VERDICT.—*Chance or Quotient Verdict.*—*Illegality of.*—Chance or quotient verdicts are universally condemned, and where it is shown by competent evidence that a verdict has been reached by such means, it will be set aside.

The Chicago and Indiana Coal Railway Company *v.* McDaniel.

WITNESS.—*Competency of Jurors to Testify as to Their Verdict.*—Jurors are not competent witnesses to the fact that their verdict was arrived at in an illegal manner, but when the verdict is attacked as being arrived at illegally, the jurors are competent witnesses to sustain its validity.

VERDICT.—*Invalidity of.*—*How Shown.*—*Witness.*—*Competency of.*—The invalidity of a verdict because of the manner of arriving at it, may be shown by affidavit of the bailiff, or other person who may be in a position to know the fact, except a member of the jury, who is incompetent to testify to that fact.

BILL OF EXCEPTIONS.—*General Bill.*—*Special Bill.*—*When Bill Must Show that it Contains all the Evidence.*—*Exception to Rule.*—*Affidavits.*—The rule requiring a bill of exceptions to show that it contains all the evidence given in the cause, only applies to general bills purporting to contain the evidence given on the trial of the cause, and does not apply to collateral matters, such as affidavits filed in support of motions.

SAME.—*Presumptions.*—It will be presumed, by the appellate tribunal, that the trial court did its duty in requiring a bill of exceptions to show the facts upon which the ruling was made, before the bill is signed; and that the ruling of the trial court is correct.

From the Fountain Circuit Court.

*S. H. Spooner, I. E. Schoonover* and *W. B. Reed*, for appellant.

*J. McCabe* and *E. F. McCabe*, for appellee.

OLDS, J.—This is an action instituted by the appellee against the appellant, in the court below, for damages alleged to have been sustained by the appellee through the negligence of the appellant.

The amended complaint upon which the trial was had is in two paragraphs, to which demurrers were overruled, and exceptions reserved. An answer was filed, the cause submitted to the jury, a special verdict returned, and judgment rendered in favor of the appellee.

Numerous errors are assigned and discussed. The first error discussed relates to the ruling of the court in overruling the demurrer to the first paragraph of the complaint. As stated in their brief by counsel for appellant,

and not controverted by the appellee, the material aver-
ments in this paragraph are as follows:

"That on or about September 21st, 1887, plaintiff bought
a lot of lumber of the Colburn Lumber Company, which
owned the same in the city of Attica, Indiana, part of
which lumber was still on a flat-car on which it was
shipped, then standing on an open side track of defend-
ant's road, which railway runs into Warren county, In-
diana, which side-track runs about north and south in a
public street in said city; that said side track was pro-
vided by defendant for the use of said lumber company
and the public in unloading cars consigned to parties at
said place, and particularly cars loaded with lumber, and
was so used by the public, and plaintiff was on said car
in accordance with said custom, and defendant put said
car at said point for the purpose of being unloaded as
aforesaid; that said flat-car was standing between high
box-cars on said side track on said public street, so that
the plaintiff's view southward was wholly obstructed when
on said flat-car; that in unloading said lumber from said
car, it became necessary for plaintiff to assist in unload-
ing the same, and plaintiff was requested so to do by
said lumber company, and plaintiff for that purpose got
upon the south end of said flat-car, and was engaged
and so situated when the defendant's employes, agents,
and servants in charge of a train of defendant's cars and
engines coming from the south and going north, negli-
gently made what is known as a drop switch of two cars
from said train, * * * and without any fault on plaintiff's
part, and wholly by the carelessness of the defendant,
caused plaintiff to be thrown down between said flat-car
and the said high box-car aforesaid. * * * All of
which injuries were caused solely by the fault and neg-
ligence of defendant, her agents and servants, and with-
out any fault or carelessness on the part of the plaintiff."

It is urged that this paragraph of the complaint is bad, and that the demurrer should have been sustained to it. The first objection urged to the paragraph is "that it does not appear from the averments of the complaint that appellee was rightfully on the car when the injury is alleged to have occurred, but the contrary is shown to have been the fact." It is insisted that it must appear, from the complaint, that appellee was at the place where the injury occurred by invitation, either express or implied, of appellant. It is conceded, as we understand counsel in their brief, that he was rightfully there if he was there by the invitation of the lumber company. It is contended that the facts stated do not show an executed contract for the purchase of the lumber on the car, for the reason that it does not appear that all the lumber on the car was included in appellee's purchase.

The question as to whether or not the complaint might have been made stronger by more explicit averments, is not for us to determine, but as to whether or not the complaint, as it is, states facts sufficient to withstand a demurrer.

We think the fair import of the language used in the complaint authorizes the conclusion that it states the facts to be that the appellant delivered a car loaded with lumber owned by the Colburn Lumber Company on a sidetrack provided by appellant upon which to deliver cars to remain, to be unloaded by the Colburn Lumber Company, or any other person owning the lumber upon the cars so delivered, thus to be unloaded; that the particular car in question was loaded with lumber consigned to and owned by the Colburn Lumber Company; that appellee had purchased a lot of lumber of said lumber company, and a part of such lumber so purchased was upon this particular flat-car. Appellee having purchased the lumber on the flat-car, he was assisting the lumber company, at its

request, in unloading the car, and in doing so was upon the car.

We do not deem it necessary, to make the complaint good, that its averments should show explicitly that there was an executed contract to purchase a particular separate portion or all of the lumber upon the car. If the appellee had purchased a bill of lumber of the lumber company, a part of which was upon the car not separated from the other, and he, as is averred, entered upon the car at the request of the lumber company to assist in unloading the car, he would be lawfully upon the car; for, if it was an undivided portion of the lumber upon the car, the unloading would be a necessary step toward the separation of the lumber, in executing the contract; but the language of the complaint may be fairly construed to mean that the lumber upon the car was a part of the bill of lumber purchased by the appellee of the company. It is insisted that, even if it is averred that appellee was requested by the lumber company to assist in unloading the lumber, it does not appear that he was requested, in so doing, to get upon the car to do so; for, in unloading lumber from a car, it is just as necessary for one person to be off the car as for another to be on the car. We do not think it will do to place such a narrow construction on the language of the complaint. A request to assist in unloading the lumber from the car carried with it the right to be at any proper place to do the work, whether such place be on or off the car.

It would not do to hold that if one was requested to assist in unloading a car he would be protected against the negligence of another if he stood by the side of the car, but would not be if he stood upon the car, unless he was specially requested to stand upon the car while so engaged in unloading it.

We think the averments of the complaint show the ap-

pellee to have been lawfully upon the car at the time the injury occurred.

It is further urged that the complaint is not sufficient, for the reason that it does not appear that the appellee did not know, that the train of cars was approaching before he got upon the car, or that, by looking before getting upon it, he could not have seen the cars coming upon the side track, and thus have avoided the injury. The complaint alleges that the injury was caused wholly by the fault and negligence of the appellant, and without any fault or carelessness on the part of the appellee. This general averment is sufficient to withstand a demurrer. This averment denies any negligence in failing to look for a train, as well as any negligence which caused or contributed to the collision of the cars, which produced the injury. *Pennsylvania Co.* v. *O'Shaughnessy, Admr.*, 122 Ind. 588.

We think the complaint sufficient, and the construction we have placed upon it well supported by authority and not inconsistent with the rules insisted upon by counsel for the appellant for the construction of pleadings.

A pleading must not only be judged by its general scope, as held by numerous decisions of this court (*Rollet* v. *Heiman*, 120 Ind. 511; *First Nat'l Bank* v. *Root*, 107 Ind. 224; *Louisville, etc., R. W. Co.* v. *Schmidt*, 106 Ind. 73; *Over* v. *Schiffling*, 102 Ind. 191), but the language used must be given a reasonable and fair construction, and if by placing such construction upon the pleading it will withstand a demurrer, a demurrer to it should be overruled, and this is not inconsistent with the rule, as held by this court, that doubts arising upon pleadings, or where pleadings are ambiguous, they are to be construed most strongly against the pleader. *Wilson* v. *Clark*, 11 Ind. 385; *State, ex rel.*, v. *Casteel, Aud.*, 110 Ind. 174.

We do not think, that because a word may have two

meanings, or that a construction may be placed upon, or interpretation given to, language used which would render a pleading defective, such meaning or interpretation should be placed upon it, unless the meaning or interpretation is such as it is fair to infer the pleader intended. If, on the contrary, a more common and natural meaning can be placed upon the word used, or a more natural and reasonable interpretation can be given to the language of the pleader which will uphold the pleading, it should be done. A strained construction can not be placed upon a pleading, as against the pleader, to invalidate his pleading, if a fair and reasonable construction will sustain it, and especially is this true in this court in relation to a pleading construed and held good by the trial court.

We think, by a reasonable construction, the first paragraph of the complaint alleges facts showing the appellee to have been lawfully on the car at the time of the alleged injuries; that the injuries were caused by the negligence of the appellant, and that appellee was without fault or negligence contributing thereto.

The remaining questions presented relate to the sufficiency of the special verdict and questions presented on the motion for a new trial, none of which may arise on a retrial of the cause, and we, therefore, deem it unnecessary and to no purpose to pass upon any of them except one, owing to the fact that the decision of the one question arising on the motion for a new trial must reverse the judgment.

The misconduct of the jury is assigned as one of the reasons for a new trial, in support of which appellant filed the affidavit of S. H. Spooner. Omitting the caption and verification, the affidavit is as follows:

"S. H. Spooner, being duly sworn, upon his oath says that the verdict in said case against said defendant was

reached by said jury in the following manner, to wit: That said jurors agreed that a vote should be taken of the jurors, and that the different amounts voted by said jurors as the damages in said case against said defendant should be added together, and the sums thereby obtained divided by twelve, and that the quotient should be the amount of damages to be assessed against said defendant; that, in pursuance of said agreement, a vote was taken, and, after being taken, added together and divided by twelve, the quotient was adopted as the damages in the case.

(Signed) "S. H. SPOONER."

The decision of *Houk* v. *Allen*, 126 Ind. 568, is decisive of this question. This fact counsel for appellee admits, but, in an elaborate and able argument, contends that the decision in *Houk* v. *Allen*, *supra*, enunciates an erroneous doctrine, and should be overruled. With this view of counsel, we find ourselves unable to agree. The case having been twice tried in the court below, we regret to reverse it; yet if a verdict was reached by a method not authorized by law, as is shown by an uncontroverted affidavit, the truth of which for the purpose of the decision of this question must be taken as admitted, the verdict should not be allowed to stand. Chance verdicts, or quotient verdicts, as it is alleged was arrived at in this case, are universally condemned, and when it is shown by competent evidence that a verdict is the result of lot or chance, it will be set aside.

Counsel for appellee do not seriously contend that a verdict arrived at in the manner alleged in the affidavit is valid, but question the method of proof by which such fact is shown in this case. Counsel assert, that the presumptions are that the verdict was arrived at in a lawful manner, and that no person has the right to be in the jury room during their deliberations, not even the bailiff,

and contends that an affidavit setting forth such facts relating to the method of arriving at a verdict must disclose the means of knowledge on the part of the affiant, before it will be received and considered by the court, and that the affidavit in this case fails to disclose the means by which the affiant gained the information; and, further, that the affidavit is defective, in that it does not affirmatively show that the jurors may not have reserved the right to agree, or not agree, to the amount when ascertained, according to their desire after it was determined. This latter objection we think not borne out by the language of the affidavit. The affidavit states as a fact that such agreement was entered into, whereby the quotient should be the amount of damages assessed against said defendant.

Then it follows with the averment that in pursuance of said agreement, the vote was taken, the amounts added and divided as agreed, and the amount adopted as the damages in the case. It seems to us that the affidavit discloses and states the fact that the amount was adopted in pursuance of the agreement, as clearly as it does that the vote was taken and the amounts added and divided in pursuance of the agreement. It seems to us that the language used, when considering the purpose in using it, clearly discloses the intention to state as a fact, and that it does state as a fact, that the quotient was adopted as the damages in the case in pursuance of the previous agreement to do so, and that the affidavit authorizes no other reasonable construction. Some authorities may be found enunciating a doctrine which would exclude proof by affidavit of the fact in regard to the manner in which a verdict was arrived at without the affiant disclosed his means of information, but this court has adopted a different rule, which we think the correct one. It must be quite apparent to every person that

matter of proof as to the particular unauthorized manner in which a jury arrived at a verdict is difficult, in view of the fact that the jurors who participated in the arrangement are incompetent witnesses to show that their verdict was arrived at by chance, for it would vitiate and impeach their own verdict, and this they are prohibited from doing; hence, while it has been the law, from an early date, that such verdicts are invalid, their invalidity has been allowed to be shown by the affidavit of the bailiff, or other person, who may have been in a position to hear and know the fact. It certainly is not consistent with our system of practice, or with the rules of law of this State, to require a party alleging and swearing to a fact in an affidavit to give his means of knowledge as to the truth of such fact, and we think there is no valid reason for making an exception to the rule in this class of cases. While the unauthorized method by which a jury arrived at a verdict is a matter very difficult of proof, the legality of the verdict is easily established when its invalidity is challenged by an affidavit, as the jurors are competent witnesses to sustain their verdict, and the method by which it was arrived at is peculiarly within their knowledge. The motion for a new trial questioning its validity on account of the misconduct of the jury is required to be filed within a time when it is fair to be presumed this testimony can be obtained. The affidavit in this case states the facts, the presumption is that it states the truth and that the affiant speaks truthfully, and, not being controverted, the facts stated are conceded to be true and are taken as true for the purpose of the decision of the question, and it remains only to determine whether that vitiates the verdict and authorizes the granting of a new trial.

As we have said, the method by which it is alleged the

verdict was arrived at in this case is universally condemned.

In 2 Thompson on Trials, section 2601, it is stated that where it is shown that the verdict is the result of lot or chance it will be set aside. In section 2602 the doctrine is laid down thus: "The method of arriving at the amount of the fine, of the damages when they are unliquidated, or the length of the term of imprisonment in criminal cases, whereby each juror puts a number into a hat and all the numbers so put in are added up and the sums divided by twelve—vitiates the verdict, where the jurors agree in advance to abide by the result. But it is otherwise where the amount which each juror puts into the hat is a mere proposition, and there is no previous agreement to abide by the result."

This method of arriving at a verdict was condemned by the Supreme Court of this State as early as the decision in the case of *Dunn* v. *Hall*, 8 Blackf. 32, in which, speaking of a verdict arrived at in like manner as in the one in this case, it is said: "The law is well settled that in actions for unliquidated damages, the jury may adopt the process resorted to in this case, to obtain a medium to be submitted as a proposition for a verdict; and it is equally well settled that it must not be adopted pursuant to an agreement to be bound by its result."

Proof in the case last cited was made by the affidavit of the constable who had the jury in charge. The doctrine, as laid down in this case, has never been questioned by any subsequent decision of this court.

In Hilliard on New Trials it is said: "As necessary to fulfil the requisition of agreement, a verdict should be the result of the deliberate judgment of the jury, and not of chance or hazard." And the quotient method is one that is condemned; and it is said that, contrary to the

prevailing rule, this irregularity has been sometimes proved by affidavits of the jurors.

In some instances a distinction has been made between affidavits stating the facts positively and those stating them on information and belief, but no such question arises in this case, as the affidavit states the facts positively.

We think no harm can result by adhering to the law as held in the case of *Houk* v. *Allen, supra,* nor do we think it will detract from the stability of, or result in the setting aside of, valid verdicts. It certainly can not be presumed that persons will make affidavits charging that verdicts are arrived at in such manner unless the facts exist authorizing such affidavits, for it would be but folly to do so, when, if it was not true, twelve jurors either stand at the bar of the court, or, if not, are residents of the county, who are competent witnesses to controvert the fact, and sustain their verdict. And a person would not take the responsibility of, and the liability for, the making of such an affidavit, when, if untrue, it could so easily be shown.

It is useless to declare a legal principle if it can have no application in practice. Theories are of no value if they are impracticable. It is nonsense to say that a verdict arrived at in the manner alleged in the affidavit in this case is invalid, if you throw around it such protections as that its invalidity can not be questioned. In addition to the positive affidavit in this case, there is in support of it the fact that the verdict is for $10,964.56. True, this fact does not of itself prove any unauthorized method of arriving at the amount, but, to say the least, it is consistent with the facts stated in the affidavit.

The conclusion we have reached leads to a reversal of

the judgment on account of the error in overruling the motion for a new trial.

Judgment reversed, with instructions to the circuit court to grant a new trial.

Filed Nov. 29, 1892.

### ON PETITION FOR A REHEARING.

OLDS, J.—A petition for a rehearing is filed in this case vigorously protesting against the decision as rendered.

In the opinion disposing of the question as to the misconduct of the jury we said:   "The decision of *Houk* v. *Allen*, 126 Ind. 568, is decisive of this question. This fact counsel for appellee admit." Counsel seriously object to the statement as to the admission. The statement is immaterial to the opinion and was made in view of the fact that counsel for appellee had filed four separate briefs in the case, and three of them were devoted almost exclusively to an attack upon the decision in the case of *Houk* v. *Allen*, *supra*, insisting that it was not sound in reason, and was a departure from the rule as declared by this court in earlier cases, and that it should be overruled, which is regarded as clearly an implied admission that the case was decisive of the question and must be overruled in order to avoid a reversal of the judgment in this case, and for the further reason that the decision in that case so clearly and fully decided the question presented in this, that it would challenge one's intelligence to say they denied it, but upon reëxamination of counsel's brief we see they do not explicitly admit it.

We are still inclined to adhere to the decision in *Houk* v. *Allen*, *supra*, and to hold that it is decisive of the question presented in this case in relation to the misconduct of the jury.

Counsel insist that we did not notice all of the objections urged to the decision in the case of *Houk* v. *Allen*, *supra*,

and the reasons why this judgment should not be reversed. It is true we did not discuss all of them, for the reason that we regarded them untenable and deemed it unnecessary to discuss them. There is one, however, that we will here consider, the others we deem it unnecessary to discuss.

It is insisted that the question presented in relation to the misconduct of the jury can not be considered, for the reason that the bill of exceptions fails to show that the affidavit of Mr. Spooner was all the evidence introduced on the issue raised.

It is a well settled rule that a general bill of exceptions purporting to contain the evidence introduced upon the trial of a case for the purpose of presenting a question upon the evidence, or in which it is necessary to have all of the evidence before this court to properly present the question, that the bill of exceptions shall contain the words, "This was all the evidence given in the cause." This universal holding of this court was originally based upon rule 30 adopted by this court in its early history, providing that "In every bill of exceptions purporting to set out the evidence upon motion for a new trial overruled, the words, 'This was all the evidence given in the cause,' are to be regarded as technical, and indispensable to repel the presumption of other evidence."

As the rule itself clearly indicates, it applies to evidence given in the trial of the cause, and not to collateral matters such as affidavits filed in support of motions.

The rule has never been applied to bills of exceptions other than general bills of exceptions purporting to contain the evidence given on the trial of the cause, and it has not, and was not intended to have, any other application. The reason of the rule does not apply in any other class of cases.

The evidence given on the trial is in a large degree

The Chicago and Indiana Coal Railway Company *v.* McDaniel.

oral testimony, and the only way it can be preserved and brought before this court is by bill of exceptions. Proof in support of motions and rulings of the court is usually brief, and in the shape of affidavits, though it may be otherwise.

Special bills of exceptions are to preserve the facts upon which the court acted. It is the duty of the court, when a bill of exceptions is presented to be signed showing a ruling, to see that it contains all of the facts upon which the ruling is based before signing it.

When a bill of exceptions shows the filing of a motion, an affidavit in support of it, setting out the affidavit and the ruling upon it, and nothing appears of record indicating that someting is omitted from the bill showing the facts upon which the court acted, it will be taken as a verity, and this court will presume, that it speaks the truth and the whole truth; that the court discharged its duty, and required the bill to state all the facts upon which the ruling was had.

This court will not presume, as against a bill of exceptions preserving the ruling of the court, that it is incomplete, and does not present the whole facts upon which the court that signed it acted. By the bill of exceptions, the court has said that it made the ruling on the facts stated in the bill.

We are cited by counsel in support of his position to Thornton on Juries, in which a statement is made based upon the decision in *Shular* v. *State*, 105 Ind. 289.

We have examined the decision in that case and it does not sustain the contention of counsel. In that case the bill of exceptions affirmatively showed that there was a hearing upon the question, several days having been occupied in the taking of testimony which was omitted from the record. That presents an entirely different question from a bill in which no such omission is shown. In that

The Chicago and Indiana Coal Railway Company *v.* McDaniel.

case the bill of exceptions showed affirmatively that the record was incomplete; in this case it does not.

The bill of exceptions is to be taken by an appellate tribunal as an affirmative declaration that it contains the facts upon which the ruling was made; for such is the object and purpose of the bill, and it is the duty of the court signing it to have it contain all the facts, and it will be presumed to do so. If any evidence is omitted, it fails to show the facts upon which the ruling was made. The only exception to this rule being in the case of a general bill containing all the evidence given on the trial of the cause, in which it is necessary to state that it contains all the evidence given in the trial of the cause. The authorities seem to be uniform in their holdings, and support the propositions we have stated. In our search, we have been unable to find any holding a contrary rule. See Elliott's App. Proced., section 797 to 726, inclusive, and authorities there cited; Am. & Eng. Encyc. of Law, vol. 2, title, Bills of Exceptions, pp. 218, 219 and 220, and authorities there cited.

The presumption is in favor of the court having discharged its duty in requiring the bill to show the facts upon which the ruling was made before the bill was signed, as well as in favor of the correctness of the ruling.

Both the general and the special bills of exceptions in this case show that the appellant filed the affidavit of Mr. Spooner in support of the second reason for a new trial, and in no way indicate that any other evidence was offered in relation to the motion, and the affidavit is set out at length in each bill, and the record shows the overruling of the motion.

The question is properly before this court for decision.

The petition for a rehearing is overruled.

McCabe, J., took no part in the decision of this case.

Filed March 11, 1893; petition for a rehearing overruled Apr. 18, 1893.