Hutchins v. The State.

---

## HUTCHINS v. THE STATE.

[No. 18,527. Filed December 23, 1898.]

INSTRUCTIONS.—*Must Be Construed Together.*—*Criminal Law.*—An instruction in a criminal cause stating the elements constituting the crime of burglary, concluding with a direction to find the defendant guilty if all of those elements were established beyond a reasonable doubt, is not so defective as to amount to reversible error in that it authorized a conviction without proof that the accused committed the crime, where the instruction immediately preceding set out the information against the accused charging him with burglary. *pp. 668-670.*

SAME.—*Must Be Construed Together.*—Instructions must be construed with reference to each other, and as an entirety, and not in dissected parts, and if the instructions as a whole correctly present the law to the jury, even though some particular one standing alone would be erroneous, affords no ground for reversal. *p. 670.*

NEW TRIAL.—*Misconduct of Jury.*—An affidavit for a new trial made by defendant's attorney on information and belief of the misconduct of the jury while in the jury room deliberating upon their verdict without stating the source of his knowledge of such misconduct is insufficient. *pp. 671-678.*

SAME. — *Newly Discovered Evidence. — Impeachment of Witness.*— Newly discovered evidence going merely to contradict and impeach a witness who testified against defendant is not sufficient to justify the court in granting defendant a new trial. *pp. 678, 679.*

SAME.—*Newly Discovered Evidence.—Confidential Communications.*— *Attorney and Client.*—Newly discovered evidence consisting of a communication made by a client to his attorney is not ground for a new trial. *pp. 678, 679.*

From the Steuben Circuit Court. *Affirmed.*

*Woodhull & Gilbert* and *H. L. Hutson,* for appellant.

*William L. Taylor,* Attorney-General, and *Merrill Moores,* for State.

MCCABE, J.—The appellant was convicted, over his motion for a new trial, on an information charging him with burglary and larceny. Error is assigned by appellant on the action of the circuit court in overruling his motion for a new trial.

It is first contended under that motion that the court erred in giving the fourth instruction asked by the State. The objection to the instruction is that it attempts to state the elements of the crime of burglary, concluding with a direction to find the defendant guilty if all of those elements are established beyond a reasonable doubt. The objection to the instruction is that it does not require the defendant to have any connection with the crime in order to his conviction. But in order properly to understand instruction four, it must be read in connection with instruction three of the same series. Indeed, the two instructions should be read as one single instruction. The two instructions read as follows: "No. 3. The

first count of the information charges the defendant now on trial with having at this county and State, upon the 5th day of December in the year 1896, unlawfully, feloniously and burglariously, in the nighttime, broken and entered into the storehouse of Alphonso M. Caswell and Almarion A. Caswell, with the unlawful and felonious intent to then and there in said storehouse take, steal, and carry away certain articles and property described in the first count of the information, and alleged as being the personal goods and chattels of the said Alphonso M. Caswell and Almarion A. Caswell. No. 4. Among the ingredients of the offense charged in the first count of the information are: (1) That said storehouse was broken and entered into; (2) that said storehouse was broken and entered into in the night time; (3) that the breaking and entering into said storehouse occurred in the county of Steuben in the state of Indiana; (4) that said storehouse was broken and entered into within the last two years; (5) that the breaking and entering into said storehouse was done with the unlawful and felonious intent to commit a felony by then and there in said storehouse unlawfully and feloniously taking, stealing, and carrying away the goods, property and chattels described in said indictment, or some portion of them. And, gentlemen of the jury, if you find all these ingredients exist beyond a reasonable doubt, then you should find him guilty as he stands charged in the first count of the information." The particular objection to this instruction is that it authorizes the jury to convict the defendant without any proof that he was the person who perpetrated the crime, the elements of which are set forth in the instruction. That contention would be correct, and ought to be upheld, if the instruction stood alone. This fourth instruction is very

awkwardly drawn, and, standing alone, cannot be upheld because it is incomplete. But it must be construed along with instruction three of the same series just preceding it, because the first is also incomplete in the absence of instruction four. It is well settled that instructions must be considered and construed with reference to each other, and as an entirety, and not separately and in dissected parts; and if the instructions as a whole correctly and fairly present the law to the jury, even though some particular one, standing alone, would be erroneous, it affords no ground for reversal. *Newport* v. *State,* 140 Ind. 299; *Shields* v. *State,* 149 Ind. 395, 406, and cases cited.

But in the first line of instruction four, it is said: "Among the ingredients of the offense charged in the first count," etc. The inquiry arises: What was the offense charged in the first count? The preceding instruction tells. It says the first count charges the defendant now on trial with having committed the crime the elements of which are enumerated in the fourth instruction. Therefore, when the court, concluding the fourth instruction, says to the jury, "If you find all these ingredients exist beyond a reasonable doubt you should find the defendant guilty as he stands charged in the first count of the information," it evidently had reference to the same crime spoken of in the preceding instruction three, and that was the burglary charged against the defendant. The elements or ingredients described in the instruction could not exist without an actor or perpetrator. And the instruction, while inexcusably defective, clearly had reference to some actor in doing the things which it denominates the ingredients of the crime. And, when the two instructions are taken together, there can be no doubt that the actor or perpetrator intended and meant in the

fourth instruction was the defendant then on trial, and that, when these ingredients or acts were established beyond a reasonable doubt, the defendant should be convicted, because his acts are referred to as constituting the ingredients or elements of the crime of burglary charged.

It is next urged, under the motion for a new trial, that the circuit court erred in giving instructions seven, eight, ten, thirteen, fourteen, and thirty-one asked by the State. Appellant admits that said instructions are correct statements of the law in the abstract, but it is contended that they are not applicable to the evidence. We think otherwise.

The next reason urged in support of the motion for a new trial is certain alleged misconduct of the jury while in the jury room, deliberating upon their verdict, prejudicial to the rights and interest of the defendant. The only proof of such misconduct is an affidavit of the defendant's attorney setting forth the fact that such misconduct of the jury took place in the jury room while they were deliberating upon their verdict, and that the affidavit was made on information and belief. The Attorney-General, on behalf of the State, insists that such affidavit furnishes no legal proof of the alleged misconduct, and hence cannot be considered. It certainly makes but little difference whether an affidavit of an outsider, charging misconduct of the jury in the jury room, states that it is made on information and belief, or is silent as to the source of affiant's belief. As no persons other than members of a jury can lawfully be in their room while they are deliberating upon their verdict, an affidavit by any person other than a member of such jury, stating that they while so deliberating in their room have been guilty of misconduct, without any statement as to the source of affiant's knowledge, implies that such

knowledge must have been derived from some one or more of the members of the jury, because otherwise the court must presume that some one has violated the law by admitting an unauthorized person into the jury room while the jury is deliberating on their verdict. But the presumption of law is that everybody has obeyed the law until the contrary is made to appear. In *Stanley* v. *Sutherland*, 54 Ind. 339, defendant made an affidavit in support of the ground of his motion for a new trial charging the jury with misconduct while deliberating on their verdict in the jury room, the affidavit concluding with the words "as affiant believes." Worden, C. J., speaking for this court in that case, at page 356, said: "The affiant does not state how he obtained information of the alleged misconduct of the jury. It is not to be supposed that he was in the jury room, and it would probably do him injustice to suppose that he was furtively hovering around, outside, listening to the deliberations of the jury. If the information came to him from the bailiff in attendance upon the jury, it seems to us that the affidavit of the bailiff ought to have been filed. If it came to him from some of the jurymen, it could not be received, for it has long been settled in this State that the affidavits of jurors cannot be received to impeach their verdict; much less could their statements be received at second hand. The affidavit may have been true, as the affiant believed, and yet the information may have been derived from some of the jurors, whose affidavits could not have been received. Without determining what would be the effect of the alleged misconduct of the jury, if legally established, we are of opinion that the court committed no error in overruling the motion on the affidavit." The supreme court of California decided the same question the same way. *People* v.

*Williams*, 24 Cal. 31. That court on p. 40 in that case said: "It does not appear, except by the affidavit of the prisoner, upon information and belief merely, unsupported by any other evidence, that it even came to the knowledge of the jury that the obnoxious papers were in the room where the jury were deliberating. It is not to be presumed that the jurors violated their duty by hunting up and reading evidence not given to them in the progress of the trial in open court under the sanction of the judge. The presumption is that they performed their duty in accordance with the oath which they had all taken before entering upon the trial of the case. To overthrow this presumption there must be some direct positive testimony tending to show misconduct on the part of the jurors in this particular. It is not enough that this objectionable matter was inadvertently left in the room, with other books and papers, where the jury might by chance have found it. There must be some positive testimony by some person, who has knowledge of the facts which he states, showing that the jurors, or some one of them, read the testimony referred to, or at least that they found it, or that it in some way came to their notice." This case clearly and strongly supports *Stanley* v. *Sutherland, supra,* and so do *Pleasants* v. *Heard,* 15 Ark. 411; *Allison* v. *People,* 45 Ill. 39; *Taylor* v. *State,* 52 Miss. 87. To the same effect are *Burgess* v. *Langley,* 5 Manning & Granger, 722 (44 Eng. Com. Law, 377); *Clum* v. *Smith,* 5 Hill, 560; *Cain* v. *Cain,* I. B. Monroe, 213; *Aylett* v. *Jewel,* 2 Wm. Blackstone, 1299; *State* v. *Wright,* 98 Iowa 705, 68 N. W. 440; *Borer* v. *State* (Tex. Cr. App.), 28 S. W. 951; *Parker* v. *State* (Tex. Cr. App.), 30 S. W. 553; *Gallihar* v. *State* (Tex. Cr. App.) 37 S. W. 329; *Gonzales* v. *State,* 32 Tex. Cr. App. 621,

25 S. W. 781; *Williams* v. *State*, 33 Tex. Cr. App. 136, 25 S. W. 629.

The appellant in this case insists that misconduct of "jurors in the jury room can only be established on information and belief, as the law presumes no one is present within said jury room except the members of the jury, and they cannot be heard to impeach their own verdict." Appellant's counsel do not cite them, but there are two cases in this court sustaining such contention. They are *Houk* v. *Allen*, 126 Ind. 568, 11 L. R. A. 706, and *Chicago, etc., R. W. Co.* v. *McDaniel*, 134 Ind. 166.

The affidavit in *Houk* v. *Allen, supra*, was made by the husband of the appellant to misconduct of the jury in their deliberations on their verdict in their room. It, as appears, contained no statement how the affiant obtained knowledge of the misconduct sworn to by him. It is said in that case that "whether the affidavit was made from information and belief or from actual knowledge, is unimportant." This case proceeds upon the theory for its justification that if affidavits of outsiders, who do not state the source of their knowledge, cannot be received to impeach a verdict for misconduct of a jury in the jury room, then such misconduct is beyond reach and the injured party is without a remedy therefor. As a palliation for so unseemly a thing as overturning a verdict on mere hearsay or second-hand statements, it is said in the case that the affiant might have been called to the witness stand and examined orally, with a view of ascertaining the weight which the affidavit should receive; and affidavits of the members of the jury or their oral testimony might have been introduced to contradict the affidavit. But no reference to or mention of *Stanley* v. *Sutherland, supra*, is made in the entire case. And so in *Chicago, etc., R. W. Co.*

v. *McDaniel, supra,* there is no reference to or mention of *Stanley* v. *Sutherland, supra,* whatever. Indeed, such mention or reference in either of the cases we are discussing would have involved the necessity of either overruling that case, or the decision of the two cases mentioned contrary to the way they were decided. In the McDaniel case, *supra,* it is still more strongly sought to uphold the ruling there by arguing, as in the *Houk* v. *Allen* case, that, if the misconduct of the jury cannot be shown in the way it was, the injured party had no remedy. It is there said: "While the unauthorized method by which a jury arrived at a verdict is a matter very difficult of proof, the legality of the verdict is easily established when its invalidity is challenged by an affidavit, as the jurors are competent witnesses to sustain their verdict, and the method by which it was arrived at is peculiarly within their knowledge." And for that reason the inference is sought to be enforced in that case that a mere hearsay or second-hand statement should be deemed sufficient to put the party in whose favor the verdict is returned on the defense thereof, or it shall be set aside. This line of reasoning loses sight of the principle of law that surrounds and guards the sanctity of a verdict. It acknowledges that the law has been settled for centuries that the statements of jurors who know more about the conduct of the jury in making the verdict than anybody else cannot be received to impeach that conduct or the verdict, whether under oath or not. How absurd, then, it would be for that same law to turn around and receive a statement impeaching such conduct and verdict from one who, in the nature of things, cannot and does not know anything about the conduct of the jury, except as he is informed by members of the jury themselves. There would be no good reason and far less sense in forbid-

ding jurors, who know all about the conduct of the jury in making the verdict, from making statements impeaching that conduct and verdict, and at the same time receive such statements from one who, in the nature of the case, cannot know anything about the truth of such statements so received. The law presumes the verdict is right, and that the jury, in making it, has been free from misconduct. This presumption prevails until it is overcome by some sort of legal proof to the contrary. If the law permitted the integrity of the verdict to be put in issue by a mere unverified complaint, a party has gained but little when at the end of a long, tedious trial, he has obtained a verdict. He must in that event fight another battle before his verdict is available. And a statement of a person not a juror, though verified, that the jury were guilty of misconduct in the jury room, without stating the source of his knowledge or how he came to know the fact, is no better than an unverified complaint. The court judicially knows that he could not very well know the fact of his own knowledge, unless he was in the jury·room at the time, and such presence would be a violation of law. *Rickard* v. *State,* 74 Ind. 275. The presumption of law is that no such violation of law occurred. Therefore, in the absence of any showing to the contrary, the presumption is that he must have derived his knowledge from some member of the jury. And as such statement, verified or unverified, could not be received from the juror to impeach the verdict or the conduct of the jury in making it, such statement cannot be received from one deriving his knowledge from a juror (at second hand); otherwise the inhibition of the law against jurors impeaching their verdict is frittered away and destroyed.

We do not mean to be understood as holding that

Hutchins v. The State.

the affidavit of no person outside of the jury room
can be received to impeach the conduct of the jury
in making the verdict.    On the contrary, where the
affiant shows in his affidavit that he had the means
of actually knowing personally of the alleged mis-
conduct, his affidavit may and ought to be received,
but not without such showing.    This is so because
the court cannot say, as matter of law, that it is
physically impossible in all cases that persons other
than jurors can actually know of such misconduct
of their own knowledge.    But such knowledge by
such persons in the nature of the surroundings must
be so rare and exceptional as to call for a statement
of how such knowledge was acquired or derived;
otherwise the courts may be overthrowing verdicts
on the mere unauthorized statements of jurors from
whom the affiant derives all his knowledge.    That
would be authorizing something to be done indirect-
ly that the law forbids to be done directly.    If, in the
interest of the correct administration of justice, the
law forbids jurors, who know better than any body
else about their conduct, to open their mouths in im-
peachment of that conduct, certainly that same law
will not permit others to do so, who are not shown
to know anything at all about it, and who, in the na-
ture of things, cannot know anything about it.    If the
law holds that the verdict is possessed of so much
sanctity in the interest of public justice, that it will
not permit a juror who knows all about how it was
made to impeach it even under oath, why should it
allow others to do so who know nothing about it?    It
would be far more reasonable to allow the juror who
knows the facts to impeach it than to permit one to do
so who knows nothing about the facts.    The law
would be singularly inconsistent with itself to forbid
the impeachment of a verdict by jurors who know all

about the facts, and at the same time, receive the statements of others to impeach it, who know nothing about such facts. *Houk* v. *Allen, supra,* is in direct conflict with *Stanley* v. *Sutherland, supra,* and is in conflict with the current of authority everywhere on the point now under consideration; and it is also in conflict with sound reason as well as authority. And the same is true of *Chicago, etc., R. W. Co.* v. *McDaniel, supra,* except that it is founded on *Houk* v. *Allen, supra,* Both cases wholly fail to speak of or refer to *Stanley* v. *Sutherland, supra,* and make no reference to or mention of any other authorities either *pro* or *con* on the subject. Nor does either of them state any satisfactory or sound reason why the question should be decided as it was in each. We therefore cannot regard them as well considered decisions, and hence they ought to be, and are, overruled, in so far as they conflict with the conclusion here reached.

We adhere to the rule laid down in *Stanley* v. *Sutherland, supra,* and hold that the circuit court did not err in overruling the motion for a new trial on said affidavit.

The next ground for a new trial is alleged newly-discovered evidence. That evidence is as to an alleged agreement of one Philips, who was jointly charged with the appellant in the information, but separately tried, convicted, and sent to the state prison. He was a material witness against appellant on his trial; and the newly discovered evidence was that the attorney of said Philips states that said Philips had entered into an agreement with the prosecuting attorney that, if said Philips gave certain evidence against appellant, the prosecuting attorney would let Philips off easy. Philips, on the witness stand on cross-examination, denied making any such agreement with the prosecuting attorney. It appears in the affi-

davit in support of this cause for a new trial that the attorney of Philips received this information as a professional and confidential communication of his client, while engaged to defend him, and refused to make an affidavit to the facts on that ground. The fact that the newly discovered evidence goes merely to contradict and impeach the witness, Philips, is a sufficient justification of the court's refusal of a new trial on this ground. *Morel* v. *State*, 89 Ind. 275; *Sutherlin* v. *State*, 108 Ind. 389; *Hamm* v. *Romine*; 98 Ind. 77; *Pennsylvania Co.* v. *Nations*, 111 Ind. 203; *Smith* v. *State*, 143 Ind. 685. The ruling was also justified by the fact that the communication was a confidential one, made by client to his attorney, and hence the attorney could not be compelled to testify to it if the new trial was granted. Section 505, Sub. 3, Burns' R. S. 1894 (497, R. S. 1881); *Borum* v. *Fouts*, 15 Ind. 50; *Bower* v. *Briggs*, 20 Ind. 139; *Bigler* v. *Reyher*, 43 Ind. 112. It follows that there was no error in overruling the motion for a new trial. The judgment is therefore affirmed.